590 P.2d 937

The **STATE** of Arizona, Appellee,

v.

**Forest Wayman YEE, Appellant.**

**No. 2 CA–CR 1352.**

Court of Appeals of Arizona, Division 2.

Dec. 15, 1978.

Rehearing Denied Jan. 23, 1979.

Review Denied Feb. 6, 1979.

John A. LaSota, Jr., Atty. Gen., by Philip G. Urry, Asst. Atty. Gen., Tucson, William A. Poach, Jr., Certified Third Year Law Student under Rule 28(e) for appellee.

John M. Neis, Pima County Public Defender by Donald H. Bayles, Jr., Asst. Public Defender, Tucson, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant was convicted of possession of a pistol by a criminal, A.R.S. Sec. 13–919, after trial to a jury. On appeal, he contends that hearsay evidence was erroneously admitted, depriving him of his right to confront and cross-examine witnesses. He further contends that the trial court erroneously denied his motion in limine to exclude evidence of an alleged assault as a bad act. We find no merit in either contention and affirm.

The defense stipulated that appellant had previously been convicted of robbery and was thus a "criminal" as defined by A.R.S. Sec. 13–919. The only issue at trial was whether appellant possessed a pistol on February 9, 1977.

Two policemen testified that on that date they found appellant in room 20 of the Rex Motel in Tucson during an investigation of an assault occurring earlier in the evening at the VFW Club. At that time, a .25 caliber automatic pistol was found in a

brown jacket hanging in the closet. The assault being investigated allegedly was committed by appellant upon one Clinton C. "Butch" Woodall during a fracas apparently caused by Woodall's advising appellant's wife of appellant's activities with another woman who was with him in the motel room at the time the officers conducted their investigation.

█ Prior to trial, a defense motion in limine to prohibit the state from introducing evidence of the alleged assault was denied under the "complete story" doctrine. Appellant's possession of a pistol first came to the officers' attention when the assault was reported. They did not learn of his felony status until after their investigation. To eliminate reference to the assault would present an awkward and interrupted picture to the jury. The two charges were so connected that proof of one incidently involves the other. *State v. Villavicencio*, 95 Ariz. 199, 388 P.2d 245 (1964). The trial court exercised a reasonable discretion in refusing to exclude reference to the assault.

Although subpoenaed by the state, Woodall did not appear at the trial. His wife testified that after the alleged assault, appellant mentioned something about her husband. She then went outside the bar and found him sitting in the driver's seat of her car. She testified that:

"A. [H]is face was all puffed up and had a little bit of blood on him and stuff, and his hair was all messed up and had some dust.

Q. Was there anybody else around at that time?

A. No, there was no one else around.

\* \* \* \* \* \*

Q. What was his emotional condition at that time?

A. Very emotional. He was crying and he was just—well, tears running down his face and telling me all this about, you know—he was really hysterical—the whole thing; that Wayman had beaten him up.

Q. What statement did he make to you at that time in the car?

A. He said that Wayman hit him, knocked him down on the ground and kicked him, and that then pulled a gun out and put it to his head.

\* \* \* \* \* \*

A. Well, Butch said that night that Wayman—he said, he's got the gun. He's got the gun, and I think—

Q. Now, when did he say that to you?

A. In the car driving away, see.

\* \* \* \* \* \*

A. Well, everything to him is, the littlest thing. That is why I never know if everything is real serious or not, because he gets like this."

On cross-examination, she testified:

"Q. When your husband said he has a gun, referring to Forest, you didn't believe him, did you?

A. No, not actually.

Q. And, in fact, he had told you on many occasions, say four or five in the past, that he had a gun pulled on him and you had heard that story before?

A. Many, many times, yes.

Q. So this was nothing knew [sic] from your husband?

A. No.

Q. And you didn't even believe him?

A. No, I didn't really.

\* \* \* \* \* \*

Q. Was your husband pretty confused when he was all hysterical that evening.

A. Yeah.

\* \* \* \* \* \*

Q. But as far as what he was saying he was kind of confused?

A. Oh, yeah.

Q. He wasn't really sure what he was saying.

A. He was just walking back and forth and saying this and that and just kind of ramblings really.

Q. And you had seen him act like this before?

A. Oh yeah, all the time."

Police Officer Reid testified that he interviewed Woodall approximately 15 minutes after the incident. He further testified:

"Q. And what was his physical condition that you observed?

A. Mr. Woodall was quite shaken. He had a few cuts and lacerations on his head. His clothes were dusty and dirty.

\*    \*    \*    \*    \*    \*

Q. What was the emotional condition of Mr. Woodall at the South Tucson Police Department—

A. He was.

Q. —based on what you observed.

A. —quite upset about what had happened.

\*    \*    \*    \*    \*    \*

Q. Officer Reid, what did Mr. Woodall tell you about the fight earlier in the evening?

A. Mr. Woodall stated that he had been down at the Veterans of Foreign Wars Club and he was getting ready to leave when he went out to his car to get some spark plugs to give to a friend of his.

He said as he went out to his car and was coming back in, he was confronted by Mr. Yee, who accused him of sticking his nose into his, Mr. Yee's own business, at which time he said Mr. Yee struck him repeatedly about the head, knocked him to the ground and proceeded to kick him.

He stated—further stated at which time, when he tried to get up Mr. Yee pulled what appeared to be a .32 caliber revolver, pointed it at his head and told him if he would move he would shoot him.

\*    \*    \*    \*    \*    \*

Q. Before you get into that, did Mr. Woodall describe the gun to you, the color of the gun and the type?

A. He stated that he believed it to be a small .32 caliber automatic, black in color."

Appellant contends that the declarations of Butch Woodall were not within the excited utterance exception to the hearsay rule and therefore were improperly admitted into evidence. We do not agree. Rule 803(2) of the Arizona Rules of Evidence covers this exception to the hearsay rule:

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

We will not reverse the trial court's ruling absent a clear abuse of discretion. *State v. Dale*, 113 Ariz. 212, 550 P.2d 83 (1976); *State v. Hughes*, 120 Ariz. 120, 584 P.2d 584 (App.1978). The basis for the spontaneous utterance exception is that the exciting event produced a shock or nervous excitement making it unlikely that the speaker would fabricate and would instead relate the truth. *State v. Perry*, 116 Ariz. 40, 567 P.2d 786 (App.1977). For this exception to apply, there must be a startling event and the words must relate to the event and have been spoken soon after the event so as not to give the speaker time to fabricate. *State v. Owen*, 94 Ariz. 404, 385 P.2d 700 (1963), vacated on other grounds, 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041 (1964) (statements by rape victim about an hour and a half after the incident fell within the exception) (" 'Time is not the sole test for either the admission or rejection of such proof; instinctiveness is the requisite.' *Linton v. State*, 171 Tex.Cr.R. 213, 346 S.W.2d 320, 323 (1961)."); *State v. Woolery*, 93 Ariz. 76, 378 P.2d 751 (1963) (statements by shooting victim made within 20 or 25 minutes of the shooting were properly admitted under the hearsay exception).

The testimony indicates that the declarant was involved in a highly disturbing encounter with appellant. Appellant himself testified that he severely beat Woodall. The testimony of Mrs. Woodall and Officer Reid indicates that the declarant was emotional, excited, crying, shaken and upset when he made his statements. Appellant's contention that Woodall's answers in re-

sponse to police questioning attenuated the effects of the startling event, thus taking them outside the excited utterance exception, is not persuasive. Merely because they were in response to such questioning in *Woolery*, did not make the answers any less spontaneous.

Appellant also contends that Mrs. Woodall's testimony as to the declarant's unreliability when he became excited and her general distrust of his statements should have foreclosed their admission as a hearsay exception because their reliability had been impugned. We do not agree.

The mere fact that evidence is admitted under a hearsay exception does not mean that confrontation rights are not violated. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The trustworthiness of spontaneous statements is established on grounds distinct from the general credibility of the declarant. *Shaffer v. Field*, 484 F.2d 1196 (9th Cir. 1973); *State v. Hughes*, supra. However, the mere fact that it may be spontaneous does not mean that confrontation rights are satisfied when the circumstances show the statement to be unreliable. *State v. Butcher*, Ariz., 585 P.2d 254 (App.1978). We do not believe the testimony of the victim's wife diminished the reliability of the spontaneous statements in view of appellant's pointing to the closet where the pistol was located, his extrajudicial admissions that the pistol was in his possession and the fact that the pistol was of the type described by the victim.

Appellant also contends that Woodall's declaration should have been excluded under Rule 403, Rules of Evidence, which provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The declarations were neither confusing, misleading, or unfairly prejudicial. We find nothing in the rule compelling their exclusion.

The judgment and sentence are affirmed.

RICHMOND, C. J., and HOWARD, J., concurring.