820 P.2d 335

**STATE of Arizona, Appellee,**

v.

**Stephen Duane THOMPSON, Appellant.**

**No. 1 CA–CR 11588.**

Court of Appeals of Arizona,
Division 1, Department C.

Oct. 24, 1991.

**472**

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Jack Roberts, Asst. Atty. Gen., and Robert K. Corbin, Former Atty. Gen., Phoenix, for appellee.

Maurice W. Coburn, Lake Havasu City, for appellant.

## SUPPLEMENTAL OPINION

McGREGOR, Judge.

After we filed our original opinion, 167 Ariz. 230, 805 P.2d 1051, the state petitioned the Arizona Supreme Court to grant review. The state argued that this court erred by not considering alternative theories of admissibility for certain hearsay testimony that, in our view, the trial court erroneously admitted pursuant to Rule 803(24), Arizona Rules of Evidence,[1] the residual exception to the hearsay rule. The supreme court granted review and remanded the matter to this court with directions to consider the state's alternative theories of admissibility for the challenged hearsay testimony. *See* Rule 23(i)(3), Arizona Rules of Civil Appellate Procedure.

We now expressly consider whether the trial judge could have properly admitted the challenged hearsay testimony under Rule 803(2), the excited utterance exception to the hearsay rule, or Rule 803(4), the exception permitting admission of statements made for the purpose of medical treatment or diagnosis.

### I.

The state first argues that the trial court's decision to admit the hearsay testimony of the child's classmate Melanie and Ms. Freeman, the school health aide, even if erroneous pursuant to the residual exception, was justified by Rule 803(2), which permits the court to admit hearsay statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Although the state argued to the trial court that the hearsay testimony of Melanie and Freeman could be admitted under either exception, the trial court relied upon the residual exception alone and explicitly declined to rely upon the excited utterance exception.[2] Because the trial court did not decide whether the challenged testimony was admissible as an excited utterance, we cannot assume that the trial court would have exercised its discretion in any particular fashion. In considering this alternative basis for admitting the hearsay statements, therefore, we

1. Citations in this opinion to "Rule __" refer to the Arizona Rules of Evidence, unless otherwise indicated.

2. After hearing argument by counsel, the court stated, "[W]hether or not these first statements [by the child to Melanie and Elizabeth Freeman fit into the] ... excited utterance exception is a close call, but since I'm granting it admissible under the other [residual] exception, I'm not going to find it necessary to rule on that."

independently consider the record to determine whether the testimony falls within the excited utterance exception. *Cf. City of Phoenix v. Geyler*, 144 Ariz. 323, 330, 697 P.2d 1073, 1080 (1985) (if trial court did not exercise its discretion in denying a motion for relief from judgment, the reviewing court will examine the facts of the case to determine if tenable grounds exist for the court's ruling); *May v. Wright*, 62 Wash.2d 69, 381 P.2d 601, 603–04 (1963) (if trial court did not rely on concept of excited utterance in admitting a hearsay statement, the reviewing court does not defer to the trial court's exercise of discretion in deciding whether the excited utterance exception applies).

■ Hearsay testimony must meet three requirements to fall within the excited utterance exception:

1. There must be a startling event.
2. The words spoken must be spoken soon after the event so as not to give the person speaking the words time to fabricate.
3. The words spoken must relate to the startling event.

*State v. Ritchey*, 107 Ariz. 552, 555, 490 P.2d 558, 561 (1971) (citing 6 WIGMORE ON EVIDENCE § 1750 (3d ed.)).

■ The excited utterance exception relies upon the assumption that "the excitement of certain startling events stills the reflective faculties," *State v. Rivera*, 139 Ariz. 409, 411, 678 P.2d 1373, 1375 (1984), thus rendering statements made at the time of or under stress caused by a star-

tling event inherently trustworthy. "The crucial point is that the court must be able to find that the declarant's state at the time he made the declaration ruled out the possibility of conscious reflection." 4 WEINSTEIN'S EVIDENCE ¶ 803(2)[01] at 803–91 (1990). In determining whether the court can rule out the possibility of conscious reflection, the time factor is "probably the most important of the elements." *Rivera*, 139 Ariz. at 411, 678 P.2d at 1375.[3]

Incidents involving sexual abuse, particularly sexual abuse of a young child by someone close to that child, present unique circumstances that affect application of the excited utterance rule. On the one hand, such cases suggest a less demanding time standard because the victim is often reluctant to report the incident and the excitement caused by the event may stay with a child for a relatively long time. *Id.* at 412, 678 P.2d at 1376. On the other hand, we cannot "ignore the hearsay rule in cases of sexual abuse to young children" and must not "expand the *Ritchey* rule to the point at which the more relaxed requirements for this hearsay exception in cases involving sexual crimes with young children swallow the hearsay rule in its entirety." *Id.* at 412–13, 678 P.2d at 1376–77. Two decisions by the Arizona Supreme Court illustrate the application of this exception in child abuse cases.

In *State v. Ritchey*, 107 Ariz. 552, 490 P.2d 558 (1971), the supreme court upheld the trial court's decision to admit hearsay testimony repeating statements made by

**3.** The very purpose of the trial in this action was, of course, to determine whether a startling event, i.e., the alleged molestation, actually occurred. At the same time, the admissibility of the hearsay testimony offered to establish the event depends upon a showing that the startling event occurred. Commentators and courts have long noted the analytical inconsistency inherent in this exception, which permits a hearsay statement to bootstrap itself into admissibility by assuming the occurrence of the event in question. *See, e.g.,* 4 WEINSTEIN'S EVIDENCE ¶ 803(2)[01] at 803–88. To avoid undermining the utility of the excited utterance exception, however, we permit a hearsay declaration to provide the foundation for this hearsay exception, even when the first element of the exception is at issue, under appropriate circum-

stances. In such situations, particularly those involving charges of child molestation, the showing required to establish the occurrence of a startling event and that required to show the declarant spoke without time to fabricate tend to coalesce. For instance, the court can consider the ages of allegedly molested children, their demeanor, and the identity of the perpetrator in deciding preliminarily whether the startling event occurred. *See, e.g., State v. Ritchey*, 107 Ariz. 552, 555–56, 490 P.2d 558, 561–62 (1971). The same factors may be considered with regard to the time factor. *See, e.g., State v. Rivera*, 139 Ariz. 409, 411–12, 678 P.2d 1373, 1375–76 (1984) (age of allegedly molested children, their demeanor and behavior relevant to determine whether time factor satisfied).

two young children, ages four and six, to their mother 45 minutes after their alleged molestation by a family friend. The evidence upon which the court relied indicated that, when the children returned home with the defendant shortly after the event occurred, the children's mother and grandmother immediately noticed that the children had been crying, were very quiet and unhappy, although normally they were "rowdy" when the defendant was at their home, went into another room rather than follow their normal practice of playing with or near the defendant, and refused to play with toys the defendant had given to them. The children's unusual affect prompted the mother to question her children, which in turn led to the statements at issue. Therefore, even though the 45–minute time interval between the event and the statements was long enough to permit reflective thought, the children's abnormal demeanor and appearance indicated that the children were still under the stress caused by the incident when they made the statements to their mother. *Id.* at 555–56, 490 P.2d at 561–62.

Thirteen years after its *Ritchey* decision, the court further defined the limits of the test adopted in *Ritchey.* In *State v. Rivera,* 139 Ariz. 409, 678 P.2d 1373 (1984), the court concluded the trial court had abused its discretion in admitting statements made by two young children, ages three and five, to their mother five to ten hours after allegedly being molested by their grandfather. The court did not find the amount of time between the incident and the statements dispositive; rather, it considered the fact that, after the alleged incident, the children played with each other in their usual manner, with unchanged demeanor. Additionally, the mother questioned the children only because of information she received from a third party rather than because of any noticeable changes in her children. Because the evidence did not establish that the children made their statements under the influence of a startling event, the trial court erred in admitting the statements as excited utterances. *Id.* at 412, 678 P.2d at 1376.

■ In the present case, the evidence likewise does not establish that the child's statements were made under the influence of a startling event. Rather, the record presents evidence of conscious reflection between the alleged event and the statements. Here, the defendant allegedly molested his 11–year–old stepdaughter at approximately three-thirty or four o'clock on the morning of December 12, 1986. The child testified that she went back to sleep after the incident and slept until she awakened at six or six-thirty o'clock for school. Although given the opportunity, she did not report the incident to her mother, either when they spoke immediately after the incident, when her mother asked what her bad dream was about, or later that morning. The child went through her usual morning routine in preparing for school. She talked with her mother about the Christmas presents she and her brother had purchased, including the gift they bought for the defendant. When her mother again asked whether she remembered what her bad dream the previous night had been about, the child responded she could not remember. The child testified that she did not report the incident to her mother because she liked the defendant and did not want to get him into trouble and because she was afraid of being disbelieved.

At school, however, at approximately eight o'clock, the child told her friend Melanie about the incident. Melanie testified that the child was upset and that Melanie convinced the child she should report the incident to Elizabeth Freeman, the health aide. Melanie also stated that both girls then attended assembly and went from there to speak with Freeman, approximately 15 minutes later. Freeman testified that the child was upset, fidgety, and near tears as she reported the incident to her.

■ Because the child made these statements after a four-hour time interval, the hearsay statements are admissible as an excited utterance only upon some proof that she did not in fact engage in reflective thought. With such a substantial time interval involved, we must carefully determine whether the child

may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue, or whether the nervous excitement had died away so that the remark is elicited by the shock of some other act not at issue, which revives the memory of the act in question.

*Rivera,* 139 Ariz. at 412, 678 P.2d at 1376 (citations omitted).

The crucial time for this analysis is the time between the startling event and the statements at issue. Although the child was upset when she reported the incident to Melanie and Freeman, she did not exhibit the requisite unusual behavior or emotional response characteristic of the stress of excitement between the time of the incident and the time of the statements. The stress inherent in reporting the incident is not the stress or excitement contemplated by *Ritchey* and *Rivera.*

Additionally, the fact that the child thought about not reporting the incident for fear of being disbelieved and because she liked the defendant reveals the type of reflective thought that precludes admission of hearsay statements pursuant to the excited utterance exception. The facts of this case, as in *Rivera,* stretch the excited utterance exception too far.

## II.

The state also argues that the video taped interview of the child by Robin Vanderlaan, a social worker, is admissible under Rule 803(4), as a statement made for the purpose of medical diagnosis or treatment. Although the state did not argue this theory to the trial court,[4] we consider whether the trial court properly could have utilized Rule 803(4) as an alternative basis for admitting the video taped interview. *See, e.g., May,* 381 P.2d at 603–04.

Rule 803(4) provides an exception for [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception

or general character of the cause or external source thereof *insofar as reasonably pertinent to diagnosis or treatment.*

(Emphasis added.) In *State v. Robinson,* 153 Ariz. 191, 735 P.2d 801 (1987), the supreme court stated that "the 'crucial question under the rule' is whether the declarant's out-of-court statements were 'reasonably pertinent to diagnosis or treatment.'" *Id.* at 199, 735 P.2d at 809 (citations omitted). The court announced a two-part test "to aid in deciding whether the proffered statements were reasonably pertinent to diagnosis or treatment: (1) was the declarant's apparent 'motive ... consistent with receiving medical care;' and (2) was it 'reasonable for the physician to rely on the information in diagnosis or treatment.'" *Id.* (citations omitted); *see also* 4 WEINSTEIN'S EVIDENCE ¶ 803(4)[01] (1990).

In *Robinson,* a child victim of sexual abuse made statements during treatment sessions with a psychologist describing the crime and identifying the defendant. The court held the statements admissible through the psychologist's testimony because they were "critical to effective diagnosis and treatment." 153 Ariz. at 199–200, 735 P.2d at 809–10. Here, in contrast, nothing in the record indicates that the child's interview with Vanderlaan was pertinent, much less critical, to effective diagnosis or treatment by Vanderlaan herself, by Dr. Strickland, the physician, or by Jacquie Scheider, the child's counselor.

Vanderlaan characterized the video taped session, which was not followed by any treatment sessions, as a "forensic interview." At the beginning of the interview, Vanderlaan explained to the child that the purpose of the video tape was to prevent the child from having to recount the incident continually. She told the child that the tape would be destroyed after the investigation was complete. Further, Dr. Strickland neither viewed the video tape nor received a written report of the interview prior to her physical examination of

---

**4.** The only theory of admissibility that the state argued to the trial court for admission of the video tape was the residual exception. The state offered only the child's statements to Jacquie Scheider, the child's counselor, pursuant to Rule 803(4).

the child. Finally, Jacquie Scheider, the child's counselor, did not indicate that she relied upon the video tape for her ongoing treatment of the child, which began a month prior to the taped interview.

For those reasons, the child's statements during the video taped interview were not "reasonably pertinent to diagnosis or treatment" and are not admissible pursuant to Rule 803(4).

### III.

Finally, the state argues that the fact that the child's statements were admitted without objection through the testimony of other witnesses could have rendered harmless any supposed deficiencies under Rule 803(24).

■ As we stated in our original opinion, because this matter involved no corroborating physical evidence or witnesses, credibility was the central issue. We cannot say beyond a reasonable doubt that "the parade of corroborating witnesses had no influence on the jury's deliberations," *State v. Martin*, 135 Ariz. 552, 555, 663 P.2d 236, 239 (1983), and therefore cannot find the erroneous admission of these hearsay statements harmless error. *See also State v. Tucker*, 165 Ariz. 340, 343–44, 798 P.2d 1349, 1352–53 (App.1990) (admission of child's hearsay statements made to police officer, detective, and social worker highly prejudicial).

### IV.

Cases involving allegations of child molestation and abuse, and the difficulties in proving such allegations, require careful treatment from the courts. We have recognized the unique characteristics of such actions and have relaxed the evidentiary requirements to some extent. We cannot, however, totally ignore rules and procedures developed to assure a fair trial to a defendant simply because we find the nature of the allegations abhorrent.

For the foregoing reasons, we reverse the conviction and sentence and remand the case to the trial court, in accordance with our original opinion.

CONTRERAS, P.J., and GERBER, J., concur.