12 P.3d 796

STATE of Arizona, Appellee,

v.

Stephanie Lynn BASS, Appellant.

No. CR–99–0468–PR.

Supreme Court of Arizona,
En Banc.

Nov. 9, 2000.

Janet Napolitano, Attorney General by J.D. Nielsen, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Law Offices of Richard L. Strohm, P.C. by Richard L. Strohm, Phoenix, Attorneys for Appellant.

## OPINION

JONES, Vice Chief Justice.

## I. INTRODUCTION

¶ 1 This case involves criminal charges against Stephanie Lynn Bass, who drove a Cadillac El Dorado westbound in the right-hand lane of Baseline Road near 24th Street in Phoenix at speeds in excess of the limit. A vehicle in the west-bound left lane driven by Meg Farrell began to change lanes, left to right in front of Bass. Farrell's right wheel crossed the line dividing her lane from the lane in which Bass was traveling. This move caused Bass to swerve right and the Cadillac to ride the curb for a moment until, according to Bass, Steve Ochoa, seated next to her, grabbed the steering wheel and jerked it to the left. Bass then lost control of the car, which spun across the center lane into oncoming eastbound traffic causing a severe multi-car collision that left one person dead, one severely injured, and others less seriously injured.

¶ 2 The first car struck by the Cadillac was Gary Whipp's Chevrolet Corsica, traveling in the eastbound left lane. The impact pushed Whipp's car into the eastbound right lane where it collided with a Honda Accord driven by Thomas Vezie. Whipp, an off-duty police officer, was severely injured in the collision. Several of the occupants of the Accord were injured, and all four, including Vezie, Virginia Vezie, Virginia Kernberger, and Kernberger's minor granddaughter, were identified as victims in the Bass indictment.

¶ 3 The second car struck by the Cadillac was a Honda Civic driven by Manuel Mendoza with Crystal Saucedo, a passenger. Continuing to spin, the Cadillac next collided with David Newell's Toyota Corolla. Newell, the driver, was killed, while his passengers, Franscene Translavina and their five-year-old daughter, suffered injuries. Finally, the Cadillac struck a flat bed truck driven by Francisco Rodriquez. This collision brought Bass' car to rest. Her four passengers, Steve Ochoa, Sandra Ochoa, Lydia Marquez, and Bass' four year-old daughter, were also identified as victims by the State.

¶ 4 The State charged Bass with various counts connected with reckless driving, consisting of manslaughter in the death of Newell, child abuse in the endangerment of her own daughter, two counts of aggravated assault for the injuries to Whipp and Sandra Ochoa,[1] and eleven counts of endangerment related to the other injured persons. The State neither alleged nor proved that Bass was driving under the influence of alcohol or drugs; rather, the State urged criminal recklessness for each of the charges, predicated on allegations that Bass' speed was excessive and that she was weaving in and out of traffic.

¶ 5 At trial, over Bass' objection, the State was permitted to offer, through Farrell's testimony, statements about Bass' driving made

1. The aggravated assault charge stemming from the injuries to Sandra Ochoa was dismissed by the court upon defense motion at the close of the State's case.

by three unidentified bystanders who came on the accident scene. In defense of the reckless allegations, Bass argued superseding cause in an effort to defeat the element of causation, offering evidence of two intervening events—Farrell's attempted lane change and Ochoa's grab for the steering wheel. Bass claims she was not reckless, and that these intervening actions broke the chain of causation and became the true causes of the accident. She did not object to the jury instruction on superseding cause and, despite her defenses, the jury found Bass guilty on all counts. She is now serving a 27.5 year prison sentence.

¶ 6 Appealing the convictions, Bass argued *inter alia* that the jury instruction on superseding cause was erroneous and that the trial court erred in allowing Farrell to relate the hearsay statements of the bystanders. The court of appeals initially reversed Bass' conviction finding that the instruction on superseding cause confused the criminal standard with negligence law in the field of torts. The appeals court upheld the admission of the bystander hearsay, as testified to by Farrell, concluding that it fell within the excited utterance exception to the hearsay rule. Upon the State's motion for reconsideration, the court of appeals' majority reversed itself and affirmed the conviction, holding that the jury instruction was invited error and thus not grounds for reversal. Judge Fidel dissented, believing that the admission of hearsay was erroneous and warranted reversal.

¶ 7 Bass petitioned this court and we granted review in order to consider the issues regarding superseding cause and the out-of-court declarations as hearsay evidence. Jurisdiction attaches under article VI, section 5(3) of the Arizona Constitution and Rule 31.19 of the Arizona Rules of Criminal Procedure.

¶ 8 We find the jury instruction on causation presented the correct legal standard for superseding cause. We agree with Judge Fidel, however, and find reversible error in the admission of hearsay evidence. The bystanders' statements were without foundation, were grossly unreliable, and were not within the excited utterance exception. The

witness confrontation clauses of the federal and state constitutions were also violated by the admission of the statements. Because the hearsay and confrontation errors are not shown as harmless beyond a reasonable doubt, we reverse Bass' conviction and remand to the trial court for proceedings consistent with this opinion.

## II. DISCUSSION

### A. The Causation Instruction

■ ¶ 9 Bass first argues that her convictions must be reversed due to errors in the trial court's oral and written instructions on superseding cause. She claims the written instruction impermissibly confused the criminal law on causation with the civil standard, destroying her only theory of defense. She also charges that the oral instruction on causation was so self-contradictory and incoherent that it confused the jury. Because this is a criminal proceeding and defendant did not object to the instruction, we review only for fundamental error. *See State v. Fulminante*, 193 Ariz. 485, 503, 975 P.2d 75, 93 (1999).

#### 1. The Criminal Standard for Superseding Cause

¶ 10 At trial, Bass argued that Farrell improperly attempted a lane change and should have been aware that she, Bass, occupied the right-hand lane. Bass asserted that were it not for Farrell's action, crossing the line, she would not have taken evasive action, swerving right, hitting the curb, and spinning out of control into traffic. Bass alternatively alleged that even while her car was riding the curb, she was in control and that it was not until passenger Ochoa grabbed the steering wheel that the car careened into oncoming traffic. She claims that each of these intervening events was a superseding cause that broke the chain of causation and excused all criminal liability for her actions.

¶ 11 The trial court gave a jury instruction on superseding cause, substantially similar to the one requested by Bass, stating that an intervening event becomes a legal excuse, *i.e.*, a superseding cause only when "its occurrence was both unforeseeable and when

with benefit of hindsight it may be described as abnormal or extraordinary."

¶ 12 Relying on a distinction first drawn in *State v. Hall*, 129 Ariz. 589, 594, 633 P.2d 398, 403 (1981), and applied most recently by the court of appeals in *State v. Jansing*, 186 Ariz. 63, 66, 918 P.2d 1081, 1084 (App.1996), Bass argues that this jury instruction was incorrect for failing to differentiate between "coincidental" intervening acts and "responsive" intervening acts. The *Hall/Jansing* line of criminal cases adopted separate standards for the two types of intervening events. Under that line, courts conclude that if the intervening event in question was in response to something defendant put in motion, as when Ochoa felt compelled to grab the steering wheel, it would need to be unforeseeable as well as abnormal or extraordinary in order to excuse liability. Where the intervening event was merely coincidental to defendant's actions, as in Farrell's lane change, it could be found superseding if merely unforeseeable.

¶ 13 We find this distinction strained and see *no logical basis for continuing to* employ a different standard in our criminal law for events that are merely coincidental. We thus dispense with the dichotomy and expressly hold, as to superseding cause, that any prior distinction between coincidental, and responsive events is eliminated. Our criminal standard for superseding cause will henceforth be the same as our tort standard. *See Petolicchio v. Santa Cruz County Fair and Rodeo Ass'n, Inc.*, 177 Ariz. 256, 866 P.2d 1342 (1994) (an event is superseding only if unforeseeable and, with benefit of hindsight, abnormal or extraordinary). To the extent that Arizona case law differs from this standard and from our holding today, we overrule it.

¶ 14 We hold the trial court's written jury instruction on superseding cause set forth the proper standard by which to determine when an intervening event becomes superseding. There are no grounds for reversal on the written jury instruction.

## 2. The Oral Instruction

¶ 15 Bass further argues that regardless of the *written* instruction, the *oral* instruction was so infected with error as to have hopelessly confused the jury. We agree the transcript depicts an oral instruction fraught with problems.[2]

¶ 16 While it is unclear whether the errors occurred because the judge misspoke or were due to mistranscription by the court reporter, our opinion in *State v. Chavarria* presents the logical approach. 116 Ariz. 401, 402, 569 P.2d 831, 832 (1977). There, we refused to treat the error as a mere transcription problem "when dealing with a matter as serious as giving up the important right to jury trial." We held that despite our factual findings as to the probable source of the error, we could not "be satisfied with mere inferences ... that the court reporter made a mistake in transcription." *Id.* Thus, we treated the error as an omission in the proceedings. Similarly, we are not convinced by compelling evidence here that the error lies with the court reporter. We will therefore presume that the jury was instructed as the transcript reflects and proceed to the determination of whether that error is fundamental.

¶ 17 *State v. Gallegos*, our guiding rule, held that error in a jury instruction is reversible if the instruction, taken as a whole, supports a reasonable presumption that the

---

**2.** By the trial judge:
A person is not held accountable for manslaughter, negligent homicide, aggravated assault, child abuse or endangerment when an intervening cause in which she does not participate causes death, serious physical injury or endangers another. This *intervening cause must also be intervening.*
Intervening cause becomes superseding cause when its occurrence was unforeseeable and when with benefit of hindsight it may be described as *normal* or extraordinary.

The State must prove beyond a reasonable doubt that an intervening cause did not cause the acts that are the subject of the indictment.
Before you go to the next instruction, I'll note for you that Paragraphs 1 and 2 use similar but not the same terms. *'Intervening' and 'superseding' are both used in Paragraphs 1 and 2. They mean the same thing.*
(Emphasis supplied).

jurors would be misled. 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994); *see also State v. Schrock,* 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986). The oral instruction on superseding cause, taken as a whole, cannot support that presumption. There is no evidence that the jury was misled, and "[m]ere speculation that the jury was confused is insufficient to establish actual jury confusion." *Gallegos,* 178 Ariz. at 11, 870 P.2d at 1107 (citing *State v. Walton,* 159 Ariz. 571, 578, 769 P.2d 1017, 1024 (1989)).

¶ 18 The issue is whether the jury was confused in its task. Here, the jurors' confusion, if any, would have been dispelled by the error-free written instruction which correctly advised them of their charge. Thus, we do not presume juror confusion in the absence of supporting evidence, and we cannot find fundamental error where the jury benefitted from a sufficiently clear written instruction.

### B. Hearsay Evidence

¶ 19 Bass contends her convictions should be overturned because of the erroneous and damaging admission of hearsay statements made by unidentified persons at the scene soon after the crash. She also argues that her right to cross-examine the declarants was abridged under the confrontation clauses of the federal and state constitutions. The State counters that the hearsay statements were admissible as excited utterances and that they were sufficiently reliable under the confrontation clauses. Though Bass properly preserved the error both as to hearsay and the right of confrontation, the State argues that any error was harmless.

### 1. The Excited Utterance Exception

¶ 20 An out-of-court statement offered to prove the truth of the matter asserted is hearsay under Rule 801, Arizona Rules of Evidence. The bystanders' utterances about Bass were offered by the State to prove the truth of the allegation that Bass drove recklessly. They were out-of-court statements and thus are inadmissible unless one of the exceptions to the hearsay rule applies. The State contends the statements were admissible as exceptions under Rule 803(2) ("[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). The exception requires proof of three elements: (1) a startling event, (2) a statement made soon after the event to ensure the declarant has no time to fabricate, and (3) a statement which relates to the startling event. *See State v. Whitney,* 159 Ariz. 476, 482, 768 P.2d 638, 644 (1989). Additionally, we require that the hearsay declarant personally observe the matter of which he speaks. *See State v. Dixon,* 107 Ariz. 415, 418, 489 P.2d 225, 228 (1971). The utterances described in this record do not satisfy the test.

¶ 21 According to Farrell's testimony at trial, the bystanders, whose identities remain entirely unknown, were driving the same stretch of road behind Farrell when Bass passed them. Farrell offered no foundation and no testimony as to the reactions of the declarants or any declaration made by them at the time they witnessed Bass' speeding. Obviously, she could not, because she was in her own vehicle.

¶ 22 Rather, after the vehicles traveled further on Baseline Road, the Farrell line-crossing incident occurred, leading to the multi-car accident. Nothing in the record suggests the bystanders were aware of the line-crossing by Farrell. Farrell's car was not impacted in the crash. She slowed to a stop and parked on the side of the road. Shortly thereafter, according to Farrell, two vehicles pulled up and parked nearby. From one of the vehicles, Farrell testified two males exited and stated that Bass had passed them "at a really high rate of speed." In addition, Farrell testified the occupant of the other car, a woman, stated that the Bass car was traveling "about 90 miles an hour." Farrell also testified that the two males agreed with "another person," presumably the woman, "who had said that [Bass] was weaving in and out." Farrell testified that the unidentified bystanders did not see the actual collision, but the record is otherwise unclear whether they did or did not.

¶ 23 The excited utterance exception requires a declaration under stress of excitement caused by a startling event. Ariz. R.

**578**

Evid. 803(2). Clearly, an automobile accident would be stimulus sufficient to startle, but an accident cannot serve as the basis for an excited utterance where it is not the event about which the declarants had spoken. *See Dixon*, 107 Ariz. at 418, 489 P.2d at 228. The scene of twisted wreckage and injured bodies the bystanders encountered would probably have been sufficient to startle. Like the crash, however, the scene was not the basis for these excited utterances because, though the bystanders viewed the wreckage, their statements did not relate to it. *See* Ariz. R. Evid. 803(2).

¶ 24 Instead, because the bystanders' statements related solely to Bass' fast driving at some point prior to the accident, the question is whether the bystanders' subsequent statements at the scene were predicated on a sufficiently startling event to allow the admission of hearsay evidence. In other words, was Bass' pre-accident speed, evidenced by later utterances from persons who may not have seen the accident, "sufficiently startling to render inoperative the normal reflective thought processes of the observer?" J. Strong, *McCormick on Evidence*, § 272 (4th ed.1992). On this record, wholly lacking evidentiary foundation as to which event startled the declarants, we must conclude it was not.

¶ 25 Courts generally do not question the sufficiency of an event to startle once they are convinced the event produced the proper effect on the witness. *See id.* However, a reviewing court will find abuse of discretion where there is reason to believe as a matter of law the event was not sufficiently startling, *see Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 704 (1998) (argument between parents witnessed by a young boy "was not a sufficiently startling or shocking occurrence to render [his] reflective faculties 'inoperable' "), or where there is reason to think that the declarant's excitement was caused by some other event.

¶ 26 For instance, we share the concern voiced by the court of appeals in *State v. Thompson* that an excited utterance must be attributable to the appropriate startling event before the admission of hearsay is justified. 169 Ariz. 471, 474–75, 820 P.2d

335, 338–39 (App.1991) ("[W]e must carefully determine whether the [declarant] 'may be considered as speaking under the stress of nervous excitement and shock produced by *the act in issue,* or whether the nervous excitement had died away so that the remark is elicited by the shock of *some other act not at issue* ....' ") (quoting *State v. Rivera*, 139 Ariz. 409, 412, 678 P.2d 1373, 1376 (1984)) (emphasis supplied).

¶ 27 Here, the break in sequence between the observations of speeding and the declarations after viewing the scene is troubling because the record discloses no evidence relating to the time lapse between the two events. This difficulty is compounded by the absence of any evidentiary foundation that the unidentified bystanders' startled conditions stemmed from seeing Bass speed, from seeing the accident happen, or from subsequently viewing the scene of the accident. Unfortunately, we are left to speculate.

¶ 28 In cases where the identities of declarant-bystanders are unknown, courts are necessarily reluctant to admit out-of-court declarations "[p]rincipally because of uncertainty that a foundation requirement has been satisfied, such as the impact of the event on the declarant." *McCormick* § 272. Here, foundation is lacking on which event caused the impact on the declarants. Similar cases have held such hearsay inadmissible. *See Lindsey v. State*, 271 Ga. 657, 522 S.E.2d 459 (1999) (testimony inadmissible as excited utterance in murder prosecution that while talking to investigating officers, witness heard a member of the crowd yell at him to tell police that defendant was the shooter); *Edwards v. State*, 736 So.2d 475 (Miss.1999) (witnesses' identifications of individual seen running near the scene of murder after shooting, given to officer on scene, inadmissible as excited utterances where the witnesses did not see the shooting and officer never testified as to witnesses' apparent states of mind or levels of excitement); *State v. Hill*, 331 S.C. 94, 501 S.E.2d 122 (1998) (testimony inadmissible as excited utterance that witness, after being present at scene of shooting for 15 or 20 minutes, heard unidentifiable person in crowd state there were two sus-

pects, where there was no evidence that unidentified declarant witnessed shooting, and it was unknown whether declarant was under stress of excitement caused by event).

¶ 29 In the case at bar, the declarants were not questioned at the scene, and they left before the investigating officers arrived. Farrell is the only person who saw them or heard them speak, and Farrell is the only one who testified as to their statements. It is not possible to determine from this record whether the declarants were under stress, and even if so, what event caused the stress, such that the statements should be accorded reliability.

▮▮▮ ¶ 30 We agree with the Pennsylvania Supreme Court's holding in *Albrecht*, that the excited utterance requirement is met when a person's "mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence ... and th[e] declaration [is] made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties." 720 A.2d at 704 (quoting *Allen v. Mack*, 345 Pa. 407, 28 A.2d 783, 784 (1942)). That standard is not met here. On this record, we cannot infer that Bass' pre-accident driving produced the requisite startling effect on declarants at the time the utterances were made. No foundation was laid to meet the clear requirements of Rule 803(2).

▮▮▮ ¶ 31 Moreover, review of the trial record as to Farrell's reliability reveals yet another evidentiary basis on which these declarations should have been excluded. Arizona Rule of Evidence 806 provides that when a hearsay statement is admitted, the declarant's credibility may be challenged through cross-examination and the introduction of evidence of inconsistent statements. Here, the defendant was left entirely without opportunity for cross-examination because the declarants were not only unavailable, they were never identified, and because Farrell knew nothing of their reactions at the time they observed the speeding. The U.S. Court of Appeals for the Third Circuit stated the following rule:

The unifying trait of all the Rule 803 exceptions is a circumstantial guarantee of trustworthiness sufficient to justify nonproduction of the declarant, whether available or not. Although Rule 806 cannot be read to confer a right to any particular form of attack on the credibility of a hearsay declarant, it does confer a generalized right that is significantly diminished when the hearsay declarant is not only unavailable, **but is also unidentified,** and the party against whom the hearsay declarant's statement is introduced is thus deprived not only of the right to cross-examine, but of any meaningful prospect of finding evidence of inconsistency or bias. *Miller v. Keating,* 754 F.2d 507, 510 (3d Cir.1985) (emphasis added). The court explained that while unavailability of a witness "is immaterial to admission under Rule 803, the unidentifiability of the declarant is germane to the admissibility determination. A party seeking to introduce such a statement carries a burden heavier than where the declarant is identified to demonstrate the statement's circumstantial trustworthiness." *Id.*

▮▮▮ ¶ 32 Trustworthiness is the cornerstone of Rule 803 exceptions to the hearsay rule. Where the sole evidence of a declarant's personal perception is the declaration itself, courts are reluctant to allow an excited utterance to stand alone as evidence of the declarant's opportunity to observe. *See, e.g., Cluster v. Cole,* 319 A.2d 320, 21 Md.App. 242 (1974) (hearsay declaration by unidentified witness to accident ruled inadmissible where nothing in the statement or circumstances under which it was given would make it so inherently trustworthy as to dispense with oath and right to cross-examination).

¶ 33 Accordingly, the hearsay declarations held admissible on this record also fail for lack of trustworthiness. No witness could speak to the declarants' veracity. And importantly, Farrell was neither a disinterested witness nor was she disconnected from the accident. She possessed good reason and motive to remove responsibility for the accident from herself and to deflect it elsewhere. By her own admission, the wheels of her

vehicle crossed the dividing line between her lane and the lane in which the defendant was traveling. The defendant and two other witnesses corroborated that fact. The credibility of the hearsay witness was thus in question due to her possible responsibility in causing the accident. The evidence should have been excluded.

## 2. Confrontation Clause

¶ 34 The Farrell testimony was inadmissible not only as hearsay, but also because it violated the confrontation clauses of the federal and state constitutions. *See* U.S. Const. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him"); Ariz. Const. art. II, 24 ("[i]n criminal prosecutions, the accused shall have the right ... to meet the witnesses against him face to face").

¶ 35 As with hearsay, the constitutional requirement is directed at the ability of a party to confront and cross-examine adverse witnesses in open court. Yet, the hearsay rule and confrontation clauses are not duplicates. *See Idaho v. Wright*, 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990); *Dutton v. Evans*, 400 U.S. 74, 81–82, 91 S.Ct. 210, 216, 27 L.Ed.2d 213 (1970); *California v. Green*, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970); *State v. Yee*, 121 Ariz. 398, 402, 590 P.2d 937, 941 (App.1978). The confrontation clauses apply uniquely to the defendant in criminal cases to ensure that testimony of an *out-of-court declarant may be given* only where it is invested with "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

¶ 36 Out-of-court statements are usually found admissible over confrontation clause objections if they fall within a firmly rooted hearsay exception. *See, e.g., State v. Wood*, 180 Ariz. 53, 64, 881 P.2d 1158, 1169 (1994). Accordingly, were we convinced that statements by the bystanders were true excited utterances, we would be unlikely to find a confrontation clause violation. However, where, as here, the hearsay exception is not satisfied, courts insist on particularized "indi-

cia of reliability." *See Idaho*, 497 U.S. at 814, 110 S.Ct. at 3146.

¶ 37 The identities of the bystander-declarants are unknown, and Farrell, who, herself, could have had a motive to fabricate, was the only witness who saw them, heard them, and testified to their statements. Farrell's memory of details was fuzzy and her recounting of events showed inconsistency between her testimony at a pretrial hearing and her testimony at trial. She could not recall how many men were in the car and spoke inconsistently about how many exited the car. She was also inconsistent as to what the bystanders said, originally testifying that the men did not indicate that Bass was weaving in and out, whereas later, at trial, she added the "weaving" element. This testimony is unreliable, and we conclude accordingly that the confrontation clauses' "practical concern for the accuracy of the truth-determining process in criminal trials" was violated. *Dutton*, 400 U.S. at 89, 91 S.Ct. at 220. The trier of fact lacked a "satisfactory basis for evaluating the truth of the prior statement." *Green*, 399 U.S. at 161, 90 S.Ct. at 1936.

¶ 38 We will dispense with a defendant's important right to confront and cross-examine witnesses only where we are convinced that the person communicating the statement could not have fabricated or embellished it. Where the out-of-court declarations fail independently to satisfy any reasonable test of reliability, their admission violates the confrontation clauses of the federal and state constitutions. The trial court's admission of Farrell's testimony as to the bystanders' declarations constitutes error.

## 3. Harmless Error

¶ 39 Admission of the bystander statements created evidentiary and constitutional violations to which Bass objected. Yet the State argues that if these were errors, they caused no harm. We note that erroneously admitted evidence is harmless in a criminal case only when the reviewing court is satisfied beyond a reasonable doubt that the error did not impact the verdict. *See Fulminante*, 193 Ariz. at 500, 975 P.2d at 90;

*Wood,* 180 Ariz. at 63, 881 P.2d at 1168; *State v. Bible,* 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993); *State v. Romanosky,* 162 Ariz. 217, 223, 782 P.2d 693, 699 (1989). Unless we are satisfied that the jury would have convicted Bass even without the bystanders' out-of-court statements, we will reverse. *See Bible,* 175 Ariz. at 588, 858 P.2d at 1191.

¶ 40 Making no serious attempt to argue that the jury would have convicted Bass without the hearsay, the State merely asserts that other competent evidence was heard on Bass' excessive speed and weaving in and out of traffic. Yet, whether other evidence exists to support a conviction is not the correct inquiry for harmless error. *See Wood,* 180 Ariz. at 64, 881 P.2d at 1169 ("[W]e cannot and do[ ] not determine an error is harmless merely because the record contains sufficient untainted evidence."). Evidence is cumulative, and therefore error is cured only where the tainted evidence supports a fact otherwise established by existing evidence. *See* BLACK'S LAW DICTIONARY 577 (7th ed.1999). A fact is not considered "otherwise established" where, as here, it is the very issue in dispute, *see Washington v. Smith,* 219 F.3d 620, 634 (7th Cir. 2000); *State v. Corrales,* 138 Ariz. 583, 595, 676 P.2d 615, 627 (1983), or where the tainted evidence is simply corroborated by other evidence. *See State v. Kennedy,* 122 Ariz. 22, 26, 592 P.2d 1288, 1292 (App.1979); *State v. Turner,* 92 Ariz. 214, 220–221, 375 P.2d 567, 571 (1962). A proposition sought to be proven by tainted evidence is "otherwise established" only where we are convinced beyond a reasonable doubt that the tainted evidence was superfluous and could not have affected the verdict. *See Corrales,* 138 Ariz. at 595, 676 P.2d at 627.

¶ 41 The State argues the testimony of "four civilian eyewitnesses and two expert witnesses" compelled the conclusion that Bass was criminally reckless in her driving. The civilian witnesses were Janie Martinez and Debbie Manning (eyewitnesses who were traveling eastbound but not involved in the accident), and Virginia Vezie and Virginia Kernberger (victims identified in the indictment). The two experts were police accident reconstructionists, detectives Coplan and Gault. This expert and lay testimony was anything but clear. The experts were widely inconsistent in their estimates, placing Bass' speed at anywhere from about 64 to 90 miles per hour. The lay witnesses also differed greatly, one estimating roughly 60 miles per hour and another guessing 75 miles per hour. The others did not posit a numeric value, saying that she traveled "very quickly" or that she "flew past."

¶ 42 Even if the testimony *supported* the reckless allegation, whether it *could have established* criminal recklessness to the satisfaction of the jury without the hearsay is a separate question. These were not the only witnesses to testify on the issue. The jury also heard testimony from the three adult passengers in Bass' car, witnesses in the best position to observe her speed directly, that she was traveling only 50 to 60 miles per hour, and testimony from Bass herself that she was going 50 to 55.

¶ 43 While there was strong evidence that Bass was speeding, the jury was not asked to determine merely whether she was speeding. Rather, the burden to convict on charges of manslaughter, child abuse, aggravated assault, and endangerment was criminal recklessness beyond a reasonable doubt. Thus, the State was required to establish that Bass' driving was grossly deviant from a reasonable norm.

¶ 44 We therefore assess the impact of inadmissible hearsay on the jury, *see State v. Williams,* 133 Ariz. 220, 224, 650 P.2d 1202, 1207 (1982), and conclude the Farrell hearsay testimony was highly incriminating, had a clear bearing on the charges against defendant, and likely affected the verdict. Admitting the hearsay effectively gave the jury the three unidentified bystander witnesses traveling in the same direction as Bass. Each had considerable opportunity and a good perspective to observe her driving. They might have been good witnesses in court, but they were rendered unreliable by Farrell's own vulnerability, by the jury's inability to hear from them directly, and by Bass' inability to cross-examine. As presented, Farrell's testimony was damaging, and the jury was left without foundation to assess credibility, how-

ever persuasive the testimony may have been.

¶ 45 Hearsay evidence cleared the way for the recklessness finding. We will not find harmless error unless we are convinced that the tainted evidence had no impact. *See, e.g., Valenzuela,* 194 Ariz. at 408, 984 P.2d at 16; *State v. Ives,* 187 Ariz. 102, 927 P.2d 762 (1996). Cases in which we have found harmless error in the admission of improper evidence cannot be characterized as close, but have presented us with a body of proof, firmly convincing on the essential facts, that the jury would have convicted even without the error. *See, e.g., State v. Poyson,* 198 Ariz. 70, 7 P.3d 79 (2000); *State v. Spreitz,* 190 Ariz. 129, 945 P.2d 1260 (1997); *State v. Kemp,* 185 Ariz. 52, 912 P.2d 1281 (1996). This is not such a case.

¶ 46 Because a jury is free to credit or discredit testimony, we cannot guess what they believed, nor can we determine what a reasonable jury should have believed. *See Kennedy,* 122 Ariz. at 26, 592 P.2d at 1292; *State v. Rich,* 184 Ariz. 179, 907 P.2d 1382 (1995). We measure only whether the State has shown harmless error by an analysis that the hearsay was essentially superfluous to what it sought to prove. Because other equally competent evidence refuted Bass' criminal recklessness, and, more importantly, because we cannot sever the impact of the out-of-court statements on the jury, we cannot say with reasonable certainty that the inadmissible hearsay testimony did not impact the verdict. The unfavorable inferences were more than cumulative of other, admissible testimony. They went directly to the critical issue. *Corrales,* 138 Ariz. at 595, 676 P.2d at 627. The error was not harmless beyond a reasonable doubt.

## III. Conclusion

¶ 47 The written jury instruction on superseding cause presented the correct legal standard. Error in the oral instruction was harmless.

¶ 48 Farrell's testimony repeating the statements of three unidentified bystanders as to Bass' speed and recklessness prior to the accident was hearsay. The bystander declarations do not qualify as excited utterances. They lacked foundation, were grossly unreliable, and should not have been admitted. For similar reasons, the statements violated the confrontation clauses of the federal and state constitutions. The testimony gave the jury persuasive, though untrustworthy, evidence which had bearing on contested allegations that Bass was criminally reckless. This error was not harmless.

¶ 49 We reverse Bass' convictions and sentences and remand the case for a new trial consistent with the evidentiary ruling set forth in this opinion.

CONCURRING: ZLAKET, Chief Justice, FELDMAN, Justice and McGREGOR, Justice.

MARTONE, Justice, dissenting.

¶ 50 I would affirm the trial court's ruling that the statements at issue fall within the excited utterance exception to the hearsay rule. The majority believes that "the scene [of the accident] was not the basis for these excited utterances because, though the bystanders viewed the wreckage, their statements did not relate to it." *Ante,* at ¶ 23. The central issue in this case is the relationship between the defendant's speed and the accident. It is inconsistent to say that this relationship can form the basis of criminal charges but that the speed which caused the accident did not "relate to" it.

¶ 51 We have long followed the Wigmore formulation of the test for excited utterances, which requires a startling event, no opportunity for fabrication or reflection on the part of the declarant, and a relationship between the statement and the startling event. *See State v. Rivera,* 139 Ariz. 409, 411, 678 P.2d 1373, 1375 (1984); *see also* 6 Wigmore, *Evidence* § 1750 at 202 (Chadbourn rev.1976). The crux of the exception is that the speaker is startled and excited by an event and delivers information *"relating to,"* not necessarily *directly about,* the event. *See* Rule 803(2), Ariz. R. Evid. This is in contrast to the more narrow present sense impression exception, Rule 803(1), which requires description of an event "made while the declarant was perceiv-

ing the event or condition or immediately thereafter." Rule 803(1), Ariz. R. Evid.

¶ 52 The majority is uncertain about whether the startling event was: (1) being passed by the defendant at a high rate of speed; (2) witnessing the accident; or (3) coming upon the accident scene. I submit that it is irrelevant. The bystanders saw the accident scene which was certainly startling. The statements at issue *related to* the accident scene. The bystanders had no opportunity for fabrication or reflection between observing the accident scene and making the statements.

¶ 53 Other cases have addressed the relationship required between the subject matter of an utterance and the startling event. *See State v. Carr*, 154 Ariz. 468, 470, 743 P.2d 1386, 1388 (1987) (finding testimony of defendant's prior statements of intent to kill victim fell under excited utterance exception although "startling event" was actual attack, not prior statements); *Yellow Cab Co. of Phoenix v. Green*, 16 Ariz.App. 485, 488–89, 494 P.2d 385, 388–89 (1972) (finding excited utterance exception applied when, after a taxi accident, taxi passenger stated "Well, he could hardly get stopped at the last intersection."). In one case, a brutal assault resulted in weeks of hospitalization and significant brain damage. *See United States v. Napier*, 518 F.2d 316, 316–17 (9th Cir.1975). Eight weeks after the assault, the victim saw a picture of her assailant in the newspaper, became agitated, and blurted out, "He killed me, he killed me." *Id.* at 317. "The display of the photograph, on the facts of this case, qualifies as a sufficiently 'startling' event to render the statement made in response thereto admissible." *Id.* at 318.

¶ 54 The language and intent of the rule and the cases are clear-the statement elicited by a startling event does not have to *bear directly* on the startling event. The only requirement is that the statement *relate to* the startling event. "Relate" means: "to show or establish logical or causal connection between." Webster's Third New International Dictionary 1916 (1976). If we say that the speed of the defendant's car when it passed the bystanders did not relate to the accident, then we draw into question the

causal relationship between speed and the collision. *See* 6 Wigmore § 1754 at 226 ("[T]he matter to be 'elucidated' is, by hypothesis, the *occurrence* or *act which has led to the utterance,* and not some distinctly separate and prior matter.") (emphasis in original). How could Ms. Bass' speed have caused the accident if it did not relate to the accident?

¶ 55 The majority suggests that Rule 806 modifies Rule 803, thus providing some previously unknown right to cross examination of declarants whose statements are admitted under Rule 803. *See ante,* at ¶ 31. But that cannot be. Rule 803 collects hearsay exceptions for which the "[a]vailability of [the][d]eclarant is [i]mmaterial." Rule 803, Ariz. R. Evid. And, Rule 806 provides for cross-examination only "*[i]f* the party against whom a hearsay statement has been admitted calls the declarant as a witness...." Rule 806, Ariz. R. Evid. (emphasis added). *If,* as in *if* the declarant is available as a witness, which is not a requirement under Rule 803.

¶ 56 The majority relies heavily on the notion that because the declarants were unidentified, their statements are unreliable. However, their statements meet the reliability standards of Rule 803(2) and Wigmore. While there may be reason to believe that Ms. Farrell's testimony is self-serving, this goes to its weight, not its admissibility. Upon cross-examination, the defendant could attack this testimony based upon Ms. Farrell's motivation to testify and her nebulous and inconsistent descriptions of the bystanders. Instead of allowing the jury to decide questions of credibility, the majority revises the Arizona Rules of Evidence to add a new reliability determination under Rule 803(2) when the declarant is unidentified. Although we have the constitutional authority to do so, *see* Ariz. Const. art. 6 § 5, we have adopted procedures for doing so which call for circulation of proposed changes and public comment. *See* Rule 28, Ariz. R.S.Ct.

¶ 57 The inquiry into the existence of an excited utterance is fact-intensive.

There is a lamentable waste of time by Supreme Courts in [excited utterance determination] attempting either to create or to respect precedents. Instead of strug-

gling weakly for the impossible, they should decisively insist that every case be treated upon its own circumstances. They should, if they are able, lift themselves sensibly to the even greater height of leaving the application of the principle absolutely to the *determination of the trial court.*

6 Wigmore § 1750 at 221 (emphasis in original). The trial court was in the best position to determine if the bystanders' statements were excited utterances. *See Rivera,* 139 Ariz. at 410, 678 P.2d at 1374 ("The modern trend is toward a liberal interpretation of this exception, leaving admissibility largely to the discretion of the court."). Because there was no abuse of discretion here, I would affirm.