### 71106. KILGORE v. THE STATE.

(340 SE2d 640)

BEASLEY, Judge.

Benjamin Franklin Kilgore appeals from his conviction for child molestation (OCGA § 16-6-4).

1. Kilgore maintains that the trial court erred in denying his motion for new trial on the bases that his conviction was contrary to the evidence presented and without proper evidence to support it. In such a challenge, although the trial court has discretion to grant a new trial, we can only review the evidence to determine if there is any evidence to support the verdict. *Drake v. State,* 241 Ga. 583, 585 (247 SE2d 57) (1978), cert. denied, 440 U. S. 928 (99 SC 1265, 59 LE2d 485) (1979); *Thomas v. State,* 175 Ga. App. 873 (1) (334 SE2d 903) (1985).

Our review of the record reveals that the jury was authorized by the evidence to find as follows. On July 27, 1983, the sixty-five-year-old Kilgore and his wife were entrusted with babysitting Amy, a three-year-old little girl, and Jason, her five-year-old brother. The couple had been caring for the young children in their home for nearly three years. The Kilgores customarily kept the children for 1 to 1-1/2 hours in the afternoons to accommodate the parents' changes in work shift. Contrary to the usual brief time span of the Kilgores' care, on the day in question the mother brought the children to the Kilgore home at approximately 3:30 p.m. for them to stay until shortly after midnight so the father could work the evening shift at the mill.

About 12:15 a.m., the parents came for the children, who had been asleep on a cot in the Kilgores' bedroom, carried them to the car and took them home. The mother noticed that the little girl was irritable and whining but attributed this to her being roused. The child slept in the mother's lap all the way home. Approximately thirty minutes after arriving home, the mother decided to retire and asked the children to wake up and use the bathroom before she put them in

their beds. The mother went to get ready for bed when she heard her young daughter crying in the bathroom. The mother testified that the daughter "was sitting on the commode and she was crying, and she said, 'Mama, I can't use the bathroom.'" The mother responded, "'Amy, what do you mean, you can't use the bathroom?' And she said, 'Cause Uncle Frank stuck his finger in my booty.'" The mother asked, "'Amy, what did you say?' And she said, "Mama, 'said, 'he stuck his finger in my booty.' and said — 'and it hurts,' she said, and 'I'm burning and hurting,' she said, 'and I can't use the bathroom.'" The mother being very upset by this asked "'"Amy, are you sure?' She said, 'Yes, mama.'" As the child was saying this she pointed to her vaginal area, which she generally called her "booty." Both the young girl and her brother frequently called Kilgore "Uncle Frank."

After the child's outburst, the mother questioned her about the circumstances and the child told her it happened in the Kilgore living room while they were watching television, and that Kilgore had picked her up, put her in his lap and "was tickling her." The mother then asked the child's young brother if he knew if anybody had bothered his sister at the Kilgores but he responded he did not know. The father then called Kilgore and confronted him with Amy's charges and Kilgore responded that the child must be making it up. The parents then took the little girl to a hospital emergency room to be examined by their family physician.

The physician's exam included a complete genital examination which revealed that the surface of the skin was extremely red and very irritated, and that there was marked bruising, the presence of several scratches, and a laceration on the right side of the outer vaginal labia that extended down beside one of the interior vaginal labia. The opening around the urethra was also bruised and there was some swelling which the doctor assumed was the reason for the child being unable to urinate. She "was inflamed, irritated, and scratched all throughout the genital area." The trauma was all external and there was no penetration of the vaginal opening. It was the physician's opinion that this type of injury would be caused by a blunt soft object such as someone's hand used in a vigorous massaging-type motion and was not the sort of trauma that would be caused by a child's accidental injury to that area or likely be the result of self-infliction because of the pain factor involved. This physician, who had treated the child from birth and who had established a comfortable relationship with her, conversed with her about what had happened. Based on his knowledge of the child, it was his opinion that she was not fabricating what she had related.

Prior to being taken to the Kilgores, the little girl was bathed and dressed by her mother, who did not notice any abnormality of the child's body, nor did the little girl complain of any harm or pain, and

she had no type of accident during the day.

During the trial, Kilgore admitted that at some point during the time he spent with the little girl, she was sitting on his lap and that she had asked him to tickle her ear. He had noticed the child "pushing herself," "messing around," and "[f]eeling around on herself" ostensibly to keep from having to use the bathroom, and that this "rubbing" lasted for two or three minutes. He initially testified that she did not use the bathroom the entire time she was in the home, but later he stated that he and his wife had made her get up and go use the bathroom.

Mrs. Kilgore testified that she was never out of sight of the children, except momentarily until she put them to bed; but she also admitted being in the bedroom and kitchen at various times while the children were in the living room with her husband. When asked if Mrs. Kilgore was out of the living room at any time prior to the children being put in the bedroom, defendant responded that she was never far away but was "all around the house." Mrs. Kilgore's testimony as to the time frame for the children's baths and bedtime contained inconsistencies.

There was no evidence that Mrs. Kilgore had taken any physical liberties with the little girl nor was there any claim or evidence of any injury to the little girl having been inflicted by her five-year-old brother. Mrs. Kilgore admitted that she had her daughter call the little girl's mother to offer the parents money to petition the district attorney not to proceed with prosecution of the defendant.

In assessing the evidence, its weight and the credibility of witnesses are matters for the jury. *Harris v. State*, 155 Ga. App. 530 (1) (271 SE2d 668) (1980); OCGA § 24-9-80. A jury in arriving at a conclusion upon disputed issues of fact may believe part of the testimony of a witness or witnesses, and reject another part. *Frazier v. State*, 152 Ga. App. 743 (1) (264 SE2d 35) (1979). Where a defendant's statements are not consistent with and do not explain other direct and circumstantial evidence, the defendant's explanation may be rejected by the trier of fact. *Green v. State*, 155 Ga. App. 795, 796 (272 SE2d 761) (1980).

Here, the jury was authorized to reject the defendant's explanation that the young girl's injuries were self-inflicted and consider more weighty the inescapable fact of his access to her, the total lack of evidence pointing to the culpability for the child's trauma of anyone else present in the Kilgore home, the uncontradicted physical well being of the child prior to being taken to the Kilgore home, and the expert opinion of the unlikelihood that the genital trauma was self-induced.

The evidence was sufficient to enable any rational trier of facts to find the existence of the offense of child molestation beyond a reason-

able doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial the defendant moved in limine that the state be precluded from eliciting the mother's statements about what the child told her concerning the molestation. The parties stipulated that the child was incompetent to be a witness at trial. Following extensive examination of the mother by counsel, the court denied the motion on the ground that the statements by the child were admissible as res gestae. Defendant again objected at trial and now maintains that the court erred in denying his motion in limine and in overruling his objection at trial, contending that the child's utterances were not contemporaneous with any act of molestation, were merely narrative and were therefore not part of the res gestae.

"Basically, the test as to whether a statement is part of the res gestae encompasses a decision as to whether the declaration accompanied the act or was so connected as to be free from all suspicion of device or afterthought. OCGA § 24-3-3. '. . . [N]o precise time can be fixed a priori when the res gestae ends, but each case must turn on its own circumstances, the inquiry being rather into events than to the precise time which has elapsed . . . It is not afterspeech that the law distrusts but afterthought.' *Wallace v. State*, 151 Ga. App. 171 (259 SE2d 172) (1979). Where the statement lacks spontaneity but is in the nature of narrations of a past transaction, it does not fall within the res gestae exception. *Parker v. State*, 162 Ga. App. 271, 273 (290 SE2d 518) (1982) . . . '[A] trial judge's determination that evidence offered as part of the *res gestae* is sufficiently informative and reliable as to warrant being considered by the jury will not be disturbed on appeal unless that determination is clearly erroneous.' " *Millwood v. State*, 174 Ga. App. 113, 115 (a) (329 SE2d 273) (1985).

It is apparent that the little girl made the statements to the first adult unconnected with the defendant or the Kilgore home at the first real opportunity she had to do so; when the parents came to take the children home the youngsters were roused from sleep, and the little girl slept during the entire ride home. During the brief time the parents were at the Kilgores to get the children, the defendant was present. The child was tired and in an atmosphere in which it is reasonable that she would be fearful or anxious towards the defendant. The statements were part and parcel of an outcry of later physical pain by the young child. The child's extreme youth, the fact that it was her first real opportunity to speak to one of her parents following the trauma, and the fact that the statements were prompted by substantial physical pain all support the salient determination in a claim of res gestae, i.e., that the declarations were free from device or afterthought. We conclude that the objected-to statements were not narrative but under the circumstances, were contemporaneous with the

molestation for the purposes of admission into evidence as res gestae. See *Brantley v. State*, 177 Ga. App. 13 (2) (338 SE2d 694) (1985).

This case most poignantly brings into focus the problems of proof inherent in a case of alleged molestation of a child of very tender years and therefore almost always incompetent to testify at trial. In most instances who would be present during such molestation save the molester and the child-victim? In recognition of this troubling problem, "[t]he majority of courts in this country permit testimony by a witness regarding the fact that the victim of a sex crime did report or relate that an offense occurred, and many of them permit, on various theories, the details of such statement by the victim. See Wigmore on Evidence, Vol. IV, § 1135 et seq." *Millwood v. State*, supra at 115, 116 (2).

We reject appellant's further contention that because the victim would have been incompetent to testify in court, her out-of-court statements were thus unreliable and incompetent. It is well settled that "[t]he fact that a child is too young to be a competent witness does not preclude the admission in evidence of her declarations as part of the res gestae." *Robinson v. State*, 232 Ga. 123, 130 (6) (205 SE2d 210) (1974).

We likewise find without merit appellant's assertion that the admission of the child's statements denied him the federal constitutional right to confront witnesses. To begin with, the defendant himself urged the court to hold the little girl incompetent for the purpose of testifying at trial and therefore effectively petitioned the court to deny himself any direct physical confrontation with the victim during the trial. Furthermore, the right does not require that all hearsay be excluded from evidence in criminal cases. A witness testifying at trial, subject to cross-examination, can testify as to what he has heard without violating the federal right. *Pointer v. Texas*, 308 U. S. 400, 407 (85 SC 1065, 13 LE2d 923) (1965); *Dutton v. Evans*, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970). These principles and this authority are recognized in *Littles v. Balkcom*, 245 Ga. 285, 286 (2) (264 SE2d 219) (1980). We do not consider any state constitutional right as it was not properly invoked.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 4, 1986.

*Tamara Jacobs, John W. Miller*, for appellant.

*Johnnie L. Caldwell, Jr.*, District Attorney, *Christopher C. Edwards, Paschal A. English, Jr., J. David Fowler*, Assistant District

*Attorneys*, for appellee.