## 76093. McCLENDON v. THE STATE.
(371 SE2d 139)

BEASLEY, Judge.

Appellant's three enumerations of error, aimed at the denial of the motion for directed verdict, the denial of new trial, and the verdict, all complain that there was no evidence corroborating the victim's testimony that she was raped by him when she returned from school on the afternoon of February 13, 1986. The issue, in this appeal from a conviction for statutory rape, is thus the sufficiency of the evidence. See *Stinson v. State,* 185 Ga. App. 543 (364 SE2d 910) (1988); *Towns v. State,* 185 Ga. App. 545 (365 SE2d 137) (1988).

The statute cautions that "no conviction shall be had for [statutory rape] on the unsupported testimony of the female." OCGA § 16-6-3 (a). As framed by appellant, the only question is whether there is evidence to corroborate the child's testimony, which is direct evidence. She testified that "[h]e stuck his penis in me" after he helped her from the school bus and into the house on her return from school. There is evidence to support this statement.

First, there is physical evidence. The doctor who examined the then-13-year-old child in the emergency room, after she finally revealed her experience to her teacher the next morning, testified that her hymen was ruptured and that her vagina was bleeding due to a recent injury. He discounted menstrual bleeding as the source.

Her teacher witnessed the bleeding and testified that there was also swelling. She discovered the child's condition when she finally took her to the bathroom around 11 a.m. after noticing her squirming as though she had a need to go around 10 a.m. and being assured by the child that she did not. The child, who was orthopedically handicapped and could not walk on her own or fully use her left arm, cried when the teacher discovered blood and asked what happened. She told the teacher what she later repeated to the investigating officer in the principal's office and again in court. The testimony that there was no bleeding noticed in the morning when the child was dressed by her mother for school, does not as a matter of law conclusively exclude the reasonable inference that the bleeding started while at school as a result of aggravation of the trauma caused by the wheelchair-bound child's squirming.

There was also other circumstantial corroborating evidence. The defendant had access to the child. He lived with her mother and the mother's common law husband in one side of the duplex where the child stayed with her grandmother. He was the boyfriend of a woman who died before trial but was "like a sister" to the child's mother. He helped with the child, such as getting her to the school bus in her wheelchair.

Thus there was evidence to corroborate the child's testimony, and slight circumstances are sufficient. *Chambers v. State*, 141 Ga. App. 438, 440 (233 SE2d 818) (1977), rev'd on other grounds, *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977).

The jury was authorized to reject the defendant's alibi of having been walking all afternoon with the child's mother and aunt on an errand to get food stamps, fish, and bread. OCGA § 24-9-80; *Kilgore v. State*, 177 Ga. App. 656, 658 (1) (340 SE2d 640) (1986). There were inconsistencies among the witnesses who testified in support of it, as to sequence of places visited, timing, and location of various persons at different times that afternoon. In addition, there was no explanation other than the child's of who other than appellant helped the child off the school bus and into the house when she returned from school.

It was also up to the jury to determine whether the child had been prevented from crying out during the episode, when the DFAC's worker was at the front door, by the defendant's hand over her mouth. *Kilgore*, supra. It was likewise within the jury's domain to accept the child's testimony, regarding her effort to hide the event, that

she was afraid to tell her mother or any other person with whom she had contact before the teacher's discovery. "On appeal, our review is restricted to the legal sufficiency of the evidence, not the weight of the evidence." *Carson v. State*, 171 Ga. App. 527, 528 (320 SE2d 382) (1984).

We must follow the lead of the Supreme Court in deciding a case such as this, demonstrated when it applied the controlling principle in *Burnett v. State*, 236 Ga. 597, 598 (225 SE2d 28) (1976): "If there is any corroborating evidence, we will not go behind the jury and pass upon its probative value. [Cits.]" The appellant even concedes in his brief that sufficiency of corroboration "is a matter for the jury to decide."

Considering both the jury's function and ours, and the rules governing corroborating evidence in statutory rape cases, there is "ample evidence from which any rational trier of fact could conclude beyond a reasonable doubt that appellant was guilty of [the offense] charged." *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong, C. J., Deen, P. J., McMurray, P. J., Carley, Pope, and Benham, JJ., concur. Banke, P. J., and Sognier, J., dissent.*

BANKE, Presiding Judge, dissenting.

The prosecutrix testified that she was raped by the appellant upon her return home from school on the afternoon of February 13, 1986. Specifically, she stated that the appellant undressed her at that time, placed his penis inside of her, and kept it there for "[a]bout 30 minutes." She began bleeding from her vagina late the following morning, while she was at school. We are asked to treat the latter occurrence as a circumstance tending to corroborate the child's account of the alleged rape. See generally OCGA § 16-6-3 (a).

It is undisputed that no vaginal bleeding occurred during the afternoon or the evening following the alleged intercourse, although the prosecutrix testified that she had been involved in a game of jump rope during this period of time. Indeed, it is undisputed that the child experienced no bleeding at any time before she left for school the following morning. (Although the majority implies that the child was attempting to conceal the bleeding at the time of its discovery at school, her teacher's testimony was to the contrary.)

The physician who examined the child following the discovery of the bleeding attributed it to a ruptured hymen. He testified that the rupture appeared to have occurred "fairly recently, because it was *still* bleeding." (Emphasis supplied.) He responded in the affirmative when asked whether the injury could have occurred earlier that day; however, he did not testify, and indeed he was not asked, whether the

injury could have occurred the previous day. He stated that he had "absolutely no idea" what had caused the rupture.

The majority speculates that the child's hymen, weakened by the 30 minutes of intercourse which had supposedly taken place some 18 hours earlier, might finally have ruptured "as a result of aggravation of the trauma" caused by her "squirming" in her wheelchair at school. This is preposterous. We are required on appeal merely to resolve all doubts and conflicts in favor of the jury's verdict, not to abandon all vestiges of common sense.

The prosecutrix admitted that she had harbored a personal animus against the appellant prior to the occurrence of the alleged rape, testifying that she had not liked him from the first day she saw him "because he looked a little strange." The child's mother, the mother's husband, and several other witnesses supported the appellant's testimony that he was not at home on the afternoon the alleged rape was supposed to have occurred. Being unable to find any trace of independent evidence in this case tending to corroborate the child's testimony that she was involved in an act of sexual intercourse on the afternoon in question, I would reverse the appellant's conviction.

I am authorized to state that Judge Sognier concurs in this dissent.

DECIDED JUNE 24, 1988.

*Richard L. Hodge*, for appellant.
*Hobart M. Hind, District Attorney, Mary Jane R. Palumbo, Assistant District Attorney*, for appellee.