EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico <br>    Recurrido <br><br>        v. <br><br> Abraham Sierra Figueroa <br>    Peticionario | Certiorari <br><br> 2002 TSPR 101 <br><br> 157 DPR \_\_\_\_ |

Número del Caso: CC-2000-485


Fecha: 28/junio/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional VII


Juez Ponente:
                    Hon. José L. Miranda de Hostos


Oficina del Procurador General:
                    Lcdo. Miguel A. Santana Bagur
                    Procurador General Auxiliar


Abogadas de la Parte Peticionaria:
                    Lcda. Ada E. Sánchez Sánchez
                    Lcda. Ana Esther Andrade Rivera


Materia: Art. 105 del Código Penal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                         CC-2000-485   Certiorari

Abraham Sierra Figueroa

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 28 de junio de 2002.

      Por hallarse el Tribunal igualmente dividido, debido a la inhibición del Juez Asociado señor Rivera Pérez, se confirma la sentencia recurrida.

      Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton emitió Opinión Disidente a la cual se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Rebollo López. El Juez Asociado señor Rivera Pérez está inhibido.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                          CC-2000-485       Certiorari

Abraham Sierra Figueroa

    Peticionario

**Opinión Disidente emitida por el Juez Asociado señor Hernández Denton a la cual se unen el Juez Presidente señor Andréu García y el Juez Asociado señor Rebollo López.**

San Juan, Puerto Rico, a 28 de junio de 2002.

La imposibilidad de que alguna de las posiciones esbozadas en el presente caso obtuviera el favor mayoritario de los miembros de este Tribunal ha tenido como consecuencia que prevalezca una decisión jurídicamente incorrecta. En vista de ello, estamos obligados a exponer los hechos y normas probatorias que justifican la revocación de la decisión recurrida y nuestro disenso.

En esencia, el presente recurso requiere que evaluemos si son admisibles en evidencia ciertas expresiones de una menor, alegada víctima del delito de actos lascivos o impúdicos, Art. 105 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4067, traídas como prueba de cargo durante la vista

preliminar para acusar por voz de su maestra de primer grado, a quien se alega, la menor narró lo acontecido. El Ministerio Público sostiene que las declaraciones son admisibles bajo la Regla 65(B) de las de Evidencia, la cual regula la admisión de declaraciones espontáneas por excitación. 32 L.P.R.A. Ap. IV, R.65(B). Contrario a esta posición, estimamos que le asiste la razón al imputado, por lo que hubiésemos revocado la decisión recurrida. Veamos.

I

El Ministerio Público formuló una denuncia contra Abraham Sierra Figueroa por el delito de actos lascivos o impúdicos. Art. 105 del Código Penal de Puerto Rico. Le imputó haber incurrido en esa conducta con la menor A.F.S., quien al momento de los eventos que originaron la denuncia tenía siete años de edad.

La prueba de cargo presentada en la vista preliminar para acusar consistió del testimonio de la señora Evelyn González Betancourt, maestra de la menor A.F.S. Testificaron, además, Damaris López, agente de la División de Delitos Sexuales de la Policía de Puerto Rico y la propia menor A.F.S.

La señora González Betancourt narró, en síntesis, que el 1 de noviembre de 1999, al llegar a la escuela en horas de la mañana, se encontró con la madre de la menor, la cual aparentaba estar preocupada. Ésta manifestó a González Betancourt, que su hija, la niña A.F.S., le estaba diciendo "algo que no entendía", "que Chino la tocó". **<u>Luego</u>**, ante preguntas de la maestra González Betancourt, la niña A.F.S. expresó a aquélla que "Chino le pidió que le tocara las tetillas, pero que ella no lo hizo". En esa ocasión, según el testimonio de esta testigo, eso fue todo lo que la niña le expresó.[1]

---

[1] Surge del expediente que "Chino" es el apodo con que se conoce al imputado Abraham Sierra Figueroa.

Al día siguiente, esto es el 2 de noviembre, la niña indicó a González Betancourt que un día en que se encontraba en la casa con sus hermanos y el imputado, "Chino [...] dijo a los hermanos que se acostaran a dormir y le pidió a ella que se acostara a dormir con él y le tocara las tetillas". Señaló en su testimonio, además, que la niña,

> no quería, que él [le] cogió la mano para que lo tocara y le besara las tetillas. El le tenía la cabeza allí. No le tocó otra parte, ni la ropa. El tenía un pantalón corto con abertura al frente. Le dio un beso de lengua. [...]. El le cogió la mano y le puso la mano en el pene y el pipí se le puso grande y [...] le pidió que volviera a mamarle la tetilla. Sintió algo frío encima. El le dijo que era sangre. El le dijo que no se lo dijera a nadie. Le cogió el dedo meñique. Le dijo que le comprara cigarrillos y dulces. Le dijo que se fuera a bañar. En el baño se dio cuenta que tenía una cosa blanca que también él lo tenía en el pipí.

Con relación al testimonio de la agente López, surge del expediente que ésta declaró que el 1 de noviembre de 1999 le fue referida una querella en la que se imputaba la comisión de actos lascivos contra una menor. Al día siguiente entrevistó a la alegada perjudicada, quien le expresó que "el joven Chino le había dicho que le mamara las tetillas". Según el expediente del caso, esta testigo indicó, además, que "a la semana [la niña] le indicó que Chino la había obligado a que le mamara las tetillas. El tenía pantalón corto y se sacó el pene. Se tocó el pene y se lo tiró en la camisa. Luego la manda a bañar, porque apestaba y la mandó a comprar cigarrillos".

La niña A.F.S., por su parte, no testificó sobre los hechos alegados, a pesar de que fue llamada a testificar por el Ministerio Público en tres ocasiones. Al ocupar la silla de los testigos se negó a responder las preguntas relacionadas con los hechos específicos que se imputan a Sierra Figueroa.

Con esta prueba testifical vertida en la vista preliminar, el magistrado instructor determinó causa para acusar, por lo que más tarde

el Ministerio Público presentó un pliego acusatorio contra Sierra Figueroa. Eventualmente, su defensa presentó una moción de desestimación al amparo de la regla 64(p) de Procedimiento Criminal. 34 L.P.R.A. Ap. II R. 64(p). Adujo que la determinación de causa probable para acusar no fue realizada conforme a derecho, toda vez que la prueba presentada consistió de prueba de referencia inadmisible.

El foro de instancia denegó la solicitud, por lo que la defensa de Sierra Figueroa acudió al Tribunal de Circuito de Apelaciones. Dicho foro apelativo denegó la expedición del auto. Finalmente, la defensa de Sierra Figueroa acudió ante este foro. Plantea como único señalamiento de error que la determinación de causa probable no fue hecha conforme a derecho, toda vez que la prueba de cargo consistió de prueba de referencia inadmisible. Añade que la exclusión de dicha prueba produce una situación de ausencia total de prueba contra Sierra Figueroa.

Evaluado su recurso, accedimos a ejercer nuestra función revisora. Como medida provisional, en auxilio de nuestra jurisdicción, paralizamos los procedimientos en instancia.

Hoy, ante la imposibilidad de articular una posición mayoritaria en torno a la controversia probatoria que plantea el presente caso, prevalece la decisión recurrida. Como procedemos a discutir, ello tiene como consecuencia, a su vez, que prevalezca una determinación de causa para acusar basada en prueba que carece de la confiabilidad exigida por nuestro ordenamiento, ya que la prueba en cuestión no satisface los requisitos probatorios de la regla cuya aplicabilidad se invoca para admitirla.

II

De entrada, destacamos que la controversia ante nuestra consideración versa sobre la admisibilidad de una declaración que se alega, constituye prueba de referencia inadmisible, y no sobre su suficiencia para propósitos de una determinación de causa para acusar por el delito de actos lascivos o impúdicos.

Asimismo, reconocemos que la resolución de la controversia probatoria planteada en el presente caso --si las declaraciones de la niña A.F.S. traídas a la vista preliminar para acusar por voz de González Betancourt son admisibles al amparo de la Regla 65(B) de las de Evidencia- requiere considerar inicialmente si la regla invocada en el caso de autos aplica en la vista de determinación de causa probable para acusar.

Pronunciamientos recientes de este Foro han reconocido que una determinación de causa para acusar debe estar sostenida por prueba de cargo admisible en un juicio plenario. Al respecto, en Pueblo v. Andaluz Méndez, 143 D.P.R. 656, 662 (1997), afirmamos que en la vista preliminar para acusar "el Ministerio Público debe presentar evidencia, **legalmente admisible en un juicio plenario,** sobre todos los elementos del delito imputado en la denuncia y su conexión con el imputado".[2] Id., (énfasis suplido). Véase además, Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 664 (1985); Cf. Pueblo v. Esteves Rosado, 110

---

[2] En Pueblo v. Andaluz Méndez, supra, indicamos además:

> La determinación de causa probable, una vez se cumple con la presentación de tal evidencia, goza de la presunción legal de corrección. [...]. Cuando el imputado entienda que el Ministerio Público no ha cumplido con su deber, el imputado puede atacar la determinación de causa probable y rebatir la presunción de corrección para lo cual está disponible la moción de desestimación al amparo de la Regla 64 (p), ello cuando existe ausencia total de **evidencia legalmente admisible** en cuanto a alguno de los elementos del delito o de la conexión del acusado con el delito imputado. Pueblo v. Andaluz Méndez, supra, en la pág. 662 (énfasis suplido) (cita omitida).

D.P.R. 334 (1980). Con ello, quisimos destacar que la prueba de cargo no sólo debe ser suficiente para establecer el escaso quantum de prueba requerido en vista preliminar para acusar, sino también debe ser prueba que sería legalmente admisible en un juicio conforme a las normas probatorias vigentes en nuestra jurisdicción.

Como se sabe, la vista preliminar constituye una etapa procesal diseñada para "evitar que se someta a un ciudadano en forma arbitraria e injustificada a los rigores de un proceso criminal". Pueblo v. López Camacho, 98 D.P.R. 700, 702 (1970); Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 663 (1985). Siendo éste su objetivo, los tribunales deben procurar que la prueba presentada por el Estado contenga garantías suficientes de confiabilidad de forma tal que quede plenamente justificado el inicio del proceso criminal contra una persona. Véase, Rolando Emmanuelli Jiménez, Prontuario de Derecho Probatorio Puertorriqueño 36 (1994).

Una determinación de causa apoyada en prueba total o parcialmente inadmisible sería contradictoria con los propósitos de la vista preliminar para acusar. Véase, Martínez Cortés v. Tribunal Superior, 98 D.P.R. 652 (1970). En este contexto, las reglas de evidencia proveen unos parámetros que, si bien no deben extenderse rígida y mecánicamente a esta etapa preliminar al juicio, resultan adecuados para determinar la confiabilidad y suficiencia de la prueba aportada por el Ministerio Público. En el caso específico ante nuestra consideración, consideramos que los peligros de que se formule una acusación de forma injustificada contra un acusado, cuando el Ministerio Público apoya su denuncia exclusivamente en prueba de referencia que alega constituye una declaración espontánea por excitación, se minimizan al evaluar su admisibilidad a la luz de los criterios de la Regla 65(B).

Aclarado lo anterior, examinemos las normas probatorias aplicables al presente caso.

III

Conforme a la Regla 60(c) de las de Evidencia, "[p]rueba de referencia [es una] declaración aparte de la que hace el declarante al testificar en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 60(c) de Evidencia; 32 L.P.R.A. Ap. IV. Como norma general, este tipo de prueba es inadmisible en los procesos judiciales. Ello es así, como resultado de "los riesgos inherentes que presenta relativos a la narración, percepción, recuerdo del acontecimiento y sinceridad del declarante". Nieves López v. Rexach Bonet, 124 D.P.R. 427, 433 (1989); Pueblo v. García Reyes, 113 D.P.R. 843, 853 (1983).

Esta norma general, sin embargo, tiene innumerables excepciones. Una de éstas la constituye la excepción que versa sobre declaraciones espontáneas por excitación. Regla 65(B) de las de Evidencia; 32 L.P.R.A. Ap. IV, R. 65(B). Al respecto, la Regla 65(B) de las de Evidencia dispone, que será admisible en evidencia, como excepción a la regla general de exclusión de prueba de referencia: "[u]na declaración hecha mientras el declarante estaba bajo la influencia de excitación causada por la percepción de un acto, evento o condición y la declaración se refiere a dicho acto, evento o condición".[3]  Regla 65(B), supra.

La excepción contemplada en la Regla 65(B) de las Evidencia se fundamenta en la creencia de que una declaración espontánea, hecha como consecuencia de un evento alarmante o excitante, en circunstancias en la que es poco probable la fabricación de la declaración, contiene garantías circunstanciales de veracidad. De este modo, se requiere que

la declaración surja en el contexto de un estado mental de descontrol o de clara excitación producida por un evento impactante o traumático. Se estima que un evento o suceso de esta naturaleza deja poco margen a la reflexión, lo que minimiza las probabilidades de fabricar o inventar una declaración.

El profesor Chiesa Aponte explica los contornos de esta excepción:

Se trata de la ocurrencia de un evento o suceso percibido por el declarante, que tiene un efecto de conmoción o excitación en el ánimo del declarante, quien hace una declaración sobre el evento mientras está todavía bajo el influjo o efecto de la excitación o conmoción que ha sufrido. 2 Ernesto Chiesa Aponte, Tratado de Derecho Probatorio, 766 (1989).

En Pueblo v. García Reyes, supra, al exponer la evolución doctrinal de esta excepción a la norma general de exclusión de prueba de referencia, señalamos lo siguiente:

La [...] excepción de las declaraciones espontáneas ha sido reconocida desde hace largo tiempo, aunque anteriormente se consideraba como una instancia de la más amplia, aunque poco definida, excepción de *res gestae*. En la práctica, ha sido acogida con mucha libertad por este Tribunal. [...]. En Pueblo v. Cortés del Castillo, 86 D.P.R. 220, 229 (1962) enumeramos los requisitos para su aplicación: "(1) *un evento suficientemente alarmante que produzca una manifestación espontánea e irreflexiva*; (2) falta de tiempo para *inventar la manifestación*; y (3) la manifestación debe referirse *al evento* que la causa" Pueblo v. García Reyes, 113 en las págs. 849–850 (énfasis suplido y en el original); citado con aprobación en Nieves López v. Rexach Bonet, 124 D.P.R. en la pág. 435.

Conforme a lo antes expuesto, como precondición para admitir este tipo de declaración, es preciso escudriñar los hechos para determinar si un evento es lo suficientemente alarmante como para generar el tipo de expresión espontánea e irreflexiva a la que alude la excepción de la Regla 65(B). Una vez se satisface esta condición esencial, nuestra indagación debe centrarse en evaluar si la declaración surge de modo espontáneo e irreflexivo. En esta determinación, es preciso evaluar

---

[3] En la jurisdicción federal la regla equivalente es la Regla 803(2).

si durante el lapso de tiempo transcurrido entre el evento y la declaración subsistió ininterrumpidamente, en quien formula la declaración, el estado de conmoción requerido por la regla 65(B). Finalmente, es preciso evaluar el contenido de la declaración para determinar si se refiere al evento que la causa.

IV

Al evaluar los hechos ante nuestra consideración, lo hacemos conscientes de los problemas probatorios involucrados en casos en los que se alega la comisión de un delito de índole sexual contra un niño de escasa edad. En este tipo de caso surge el dilema de que, mientras por un lado, las declaraciones de la alegada víctima de abuso sexual, en ocasiones, constituyen la única prueba del delito, por otro lado, por razón de la edad de los niños, está latente la posibilidad de declaraciones exageradas o, en el peor de los casos, fabricadas.[4] Véase, People of Territory of Guam v. Ignacio, 10 F.3d 608, 612 (9 Cir. 1993). Ante ambas posibilidades, los tribunales deben ser sumamente cuidadosos, de forma tal que se garantice que el proceso judicial conduzca a la verdad, conforme a las normas probatorias vigentes, y que simultáneamente se protejan plenamente los derechos de la persona imputada.

Ahora bien, el factor de mayor importancia, y también, más problemático, presente en la evaluación de la admisibilidad de declaraciones espontáneas por excitación, lo constituye el elemento temporal, particularmente cuando transcurre un lapso de tiempo sustancial entre el evento conmocionante y la declaración. 2 McCormick

---

[4] Estas particularidades han llevado a algunas jurisdicciones a adoptar normas específicas para atender este tipo de controversia probatoria. Véanse, Ark. R. Evid. 803(25); Fla. Stat. Ann. sec. 90.803(23); Miss. R. Evid. 803(25); N.D.R. Evid. 803(24); 12 Okla. Stat. Ann. sec. 2803.1; Vernon's Ann. Texas C.C.P. Art. 38.072; Utah Stat. Sec. 76-5-411.

On Evidence, sec. 272, en la pág. 207 (5ta ed. 1999). Esta situación se dramatiza en el contexto de niños de escasa edad, debido a que la conducta de éstos en situaciones traumáticas, como norma general, es distinta a la que pudiera exhibir un adulto.

Al respecto, tribunales de otras jurisdicciones han destacado que los niños suelen estar renuentes a informar eventos que le produzcan tensión o conmoción, que suelen informar incidentes de esta naturaleza sólo a sus madres y, que en su caso, un estado de excitación puede tener una duración mayor que en personas adultas. Véanse, State v. Thompson, 820 P.2d 335, 337 (Ariz.App. 1991); State v. Moats, 457 N.W.2d 299 (1990); State v. Rivera, 678 P.2d 1373, 1376 (1984). Estas consideraciones, aunque han generado una aplicación liberal de los requisitos probatorios exigidos por esta excepción, no alteran la norma fundamental de que la declaración será admisible sólo si es formulada mientras subsiste un estado de conmoción o excitación en el niño o niña generada por el evento en controversia.

Tribunales de otras jurisdicciones, a los cuales acudimos con fines comparativos, han evaluado varios factores para hacer esta determinación en controversias similares a la que hoy enfrentamos. Por ejemplo, algunos tribunales han considerado si la declaración del niño se produce en la primera oportunidad que tiene para expresarla. Véanse, Greenlee v. State, 884 S.W. 2d 947 (1994); Kilgure v. State, 340 S.E. 2d 640 (1986); Langford v. State, 312 So. 2d 65 (Crim. App. 1975). Otros han evaluado si la declaración es producto de un interrogatorio por parte de un adulto. Burgess v. State, 644 So, 2d 589 (Fla. Dist. Ct. App. 4th Dist. 1994); State v. Gantt, 644 S.W. 2d 656 (Mo. Ct. App. W.D. 1982). Aún otros, han considerado si la alegada víctima llevó una vida que aparentaba ser normal durante el lapso de tiempo transcurrido

entre el evento conmocionante y la declaración. State v. Ritchey, 490 P.2d 558 (1971); State v. Rivera, supra; State v. Thompson, supra.

Sobre este último aspecto, la indagación se dirige a determinar si, durante el lapso de tiempo transcurrido entre el evento y la declaración, hay evidencia de cambios en la conducta normalmente observada en el niño. En este sentido, se ha evaluado si el niño manifiesta renuencia a conversar, tensión, nerviosismo, episodios continuos de llanto o desinterés por el juego, entre otras cosas. Véanse, State v. Ritchey, supra, (el tribunal admitió una declaración formulada cuarenta y cinco minutos después del evento conmocionante debido a que los niños declarantes mostraban una conducta claramente anormal); State v. Rivera, supra, (el tribunal excluyó una declaración por razón de que los niños involucrados no mostraron ningún cambio en su conducta durante las diez horas que transcurrieron entre el evento y la declaración); State v. Thompson, supra, (al excluir la declaración que una niña de once años hizo a su compañera de clases varias horas después del alegado incidente, el tribunal consideró que la niña declarante durmió varias horas después del incidente, se levantó a la hora acostumbrada para ir a la escuela, se preparó para ir a la escuela y conversó con su madre sobre los regalos que habían comprado para la época navideña). People v. Simpkin, 697 N.E. 2d 302 (4th Dist. 1998) (el tribunal excluyó una declaración formulada varios meses después del alegado evento conmocionante debido a que la declaración no fue espontánea ni consistente, el niño posteriormente se retractó y existían motivos para la fabricación de la declaración); State v. Taylor, 704 P.2d 443 (Ct. App. 1985) (el tribunal excluyó la declaración porque, entre otras cosas, los padres del niño no percibieron ninguna anormalidad en el menor, sino hasta tarde en el día o temprano en la mañana luego del alegado incidente).

Conforme a lo anterior, al evaluar la admisibilidad de declaraciones de niños de escasa edad al amparo de la regla 65(B) de las de Evidencia, los tribunales deben considerar la totalidad de las circunstancias. Deben, por lo tanto, considerar factores como la edad del menor, la severidad del evento en cuestión, la condición emocional del niño al momento de formular la declaración, y la conducta desplegada por éste durante el lapso de tiempo transcurrido entre el evento y la declaración. Deben examinar, además, si la declaración es formulada en la primera oportunidad real que tiene el menor de expresarla, a la luz de su edad y entorno familiar, y si la terminología usada por el niño resulta apropiada para su edad. Además, deben tomar en consideración cualquier otro aspecto que permita ponderar si la declaración tiene suficientes garantías de confiabilidad.

Mientras mayor sea el lapso de tiempo transcurrido entre el evento conmocionante y la declaración, mayor cautela deben tener los tribunales. Ello por razón de que la posibilidad de que la declaración haya sido formulada como resultado de un proceso reflexivo o, más bien, luego de que el estado de conmoción se haya disipado, aumenta proporcionalmente con el transcurso del tiempo. Véase, 2 McCormick On Evidence, supra, en la pág. 202.[5] La evaluación debe ir dirigida a determinar si durante el lapso de tiempo transcurrido entre el evento y la declaración, el declarante tuvo oportunidad de reflexionar por haberse disipado su estado de excitación o conmoción.

---

[5] Al respecto se ha señalado lo siguiente:

A useful rule of thumb is that where the time interval between the event and the statement is long enough to permit reflective though, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process. 2 McCormick On Evidence, sec. 272, pág. 207 (5ta ed. 1999).

Por otro lado, debe advertirse que no toda declaración formulada en estado de excitación es admisible bajo la regla 65(B). Es necesario que la excitación haya subsistido desde el alegado evento conmocionante. En este sentido, no basta demostrar que el declarante haya estado nervioso o excitado al formular la declaración, pues puede tratarse de un estado momentáneo, generado por algún acto o circunstancia independiente que lo lleva a recordar el evento original. De ser esta la situación, la declaración debe ser excluida. Es preciso demostrar la continuidad del estado de conmoción desde el evento originario hasta la declaración.

Al aplicar los preceptos probatorios antes expuestos a los hechos del caso llegamos a la conclusión de que las declaraciones en controversia en el presente caso son inadmisibles en evidencia. Procedía, por tanto, revocar la decisión recurrida.

V

Los hechos previamente expuestos revelan que las declaraciones objeto de impugnación en el caso de autos fueron formuladas en dos momentos distintos. La primera declaración fue efectuada el 1 de noviembre, cuando la niña A.F.S. expresó a la señora González Betancourt, en esencia, que "Chino le pidió que le tocara las tetillas, pero que ella no lo hizo". En esa ocasión, la menor no formuló declaración adicional. Surge del expediente del caso que al momento de la declaración, la niña estaba llorando.

**Al otro día**, esto es, el 2 de noviembre, la niña A.F.S. formuló declaraciones más detalladas sobre los actos que se imputan a Sierra Figueroa. Estas nuevas expresiones fueron hechas tanto a González Betancourt como a la agente López.

No hay controversia entre las partes en torno a que las declaraciones formuladas el 2 de noviembre a la señora González

Betancourt y a la agente López, no son admisibles en evidencia bajo la regla de declaraciones espontáneas por excitación. Al respecto, nos destaca el Ministerio Público, con razón, lo siguiente:

> ciertamente hay que distinguir lo que la niña expresó el 1ro de noviembre de 1999 y lo que manifestó al día siguiente. Concedemos que lo declarado por ella el día 2 de noviembre no podría razonablemente considerarse como producto de "excitación nerviosa", pues la misma maestra declaró que la niña estaba **tranquila** y habló con más detalles. (énfasis suplido).

Ante ello, la única declaración cuya admisibilidad está en controversia es la efectuada por la menor el 1 de noviembre a su maestra de escuela, en términos de que "Chino le pidió que le tocara las tetillas, pero que ella no lo hizo".

En el presente caso, la comisión de actos lascivos por parte de un adulto, miembro de la familia, contra una niña de siete años de edad constituye un evento, en extremo, traumático. En este aspecto coincidimos con otras jurisdicciones que han llegado a la misma conclusión en controversias similares. Véanse, People of Territory of Guam v. Ignacio, supra; U.S. v. Nick, 604 F.2d 1199 (9th Cir. 1979). Queda, así, satisfecha la primera condición requerida por la Regla 65(B).

De igual forma, en cuanto al contenido de la declaración, resulta evidente que se refiere al evento específico que, según se alega, la produce. De este modo, también queda satisfecho este requisito.

Nuestra evaluación del requisito restante, --si la declaración fue formulada por la niña bajo un estado de excitación o conmoción generado por el acto en cuestión en circunstancias que revelan la ausencia de reflexión-- nos convence, en cambio, de que la declaración de la menor A.F.S. es inadmisible bajo la Regla 65(B).

Conforme a las normas previamente expuestas, la consideración de una controversia probatoria al amparo de la Regla 65 (B) de Evidencia

requiere precisar, bajo este tercer requisito, delicados asuntos, tales como el momento y contenido exacto de la declaración, el estado anímico del declarante y el contexto general que rodea la declaración. Una lectura de la denuncia formulada contra Sierra Figueroa revela que los alegados actos lascivos ocurrieron en algún momento de septiembre de 2000. La declaración cuya admisibilidad solicita el Ministerio Público fue hecha el 1 de noviembre del mismo año; esto es, como mínimo, la declaración fue hecha un mes después del evento traumático. Este lapso de tiempo sustancial, aunque no es determinante *per se*, requiere que ejerzamos un cuidado especial al determinar si dicha declaración fue producida bajo un estado de conmoción producido por el acto lascivo imputado a Sierra Figueroa o si la declaración fue producida luego de que finalizara tal estado anímico.

Somos de opinión que la evidencia que tuvo ante sí el foro de instancia era contraria a lo alegado por el Ministerio Público. Según los autos del caso, González Betancourt declaró que no observó nada anormal en la niña previo al día en que ésta formuló la declaración cuya admisibilidad está en controversia. En específico, en su declaración en la vista preliminar declaró que "[l]a niña no bajó las notas, hablaba mucho en clase y la maestra tenía que llamarle la atención [...] [y que] siempre ha sido habladora". Incluso, se destaca que, previo al momento en que la niña hizo las declaraciones a la maestra, "era una estudiante excelente de cuatro puntos".

Por otro lado, notamos que la declaración de la menor surge como consecuencia de las preguntas que le formuló la maestra González Betancourt. Al respecto, el alegato del recurrido señala que la declaración en controversia fue formulada luego de que González Betancourt "se arrodill[ara] en la puerta junto a [la menor][,] la sent[ara] en su falda" y le dijera "cuéntame qué pasó". Ante estas

circunstancias, la declaración de la menor no parece haber sido espontánea, sino más bien, parece resultado de las preguntas formuladas por la maestra.

Finalmente, los autos del caso revelan que González Betancourt formuló tales preguntas luego de que la madre de la menor indicara que ésta había dicho "algo que no entendía". Esta expresión de la madre de la niña sugiere que la manifestación de la niña presentada en evidencia en la vista preliminar a través de González Betancourt no fue la primera declaración de la niña sobre los hechos imputados al peticionario. Ello, a su vez, sugiere que la declaración cuya admisibilidad está en controversia no se produjo en la primera oportunidad que tuvo la niña de contar lo que se alega le sucedió, y que, en cambio, previo a la declaración presentada en vista preliminar, la niña había hecho expresiones relacionadas al alegado evento traumático.

Ante lo anterior, estimamos que no se satisfacen los criterios establecidos por la Regla 65(B) de las de Evidencia para que la declaración de la menor A.F.S. sea admisible en evidencia por voz de la señora González Betancourt.[6]

Por ello, contrario al resultado que ha tenido este caso por la imposibilidad de articular una mayoría, hubiéramos revocado las decisiones de los foros apelativos y de instancia, y en consecuencia, hubiésemos dejado sin efecto la determinación de causa emitida en la vista preliminar. Pues, como afirmamos antes, en la etapa de vista

---

[6] En el recurso de certiorari se señala, además, que en su contrainterrogatorio, la señora González Betancourt expresó que "[e]n septiembre [la niña] [...] dijo a la maestra que tenía mucho miedo y que quería que la [ayudara]". Esta expresión, vista en el contexto general del caso, no revela necesariamente un estado de conmoción continua en la niña A.F.S. desde el alegado evento de actos lascivos hasta que expresara la declaración, que nos mueva a alterar nuestra conclusión.

preliminar "el Ministerio Público debe presentar evidencia, legalmente admisible en un juicio plenario, sobre todos los elementos del delito imputado en la denuncia y su conexión con el imputado". Pueblo v. Andaluz Méndez, 143 D.P.R. en la pág. 662.

En ausencia de prueba independiente a la que consideramos inadmisible, que revele la existencia del escaso quantum de prueba requerido en vista preliminar, hubiésemos ordenado la desestimación de la acusación formulada contra Sierra Figueroa.

Por ello, respetuosamente disentimos.

Federico Hernández Denton
Juez Asociado